502 So.2d 672 (1987)
James Wright KNOX, Jr.
v.
STATE of Mississippi.
No. 56205.
Supreme Court of Mississippi.
February 11, 1987.
Jerry L. Mills, Pyle, Harris, Dreher & Mills, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's case arises from a brutal sexual assault in Jackson, Mississippi, in the fall *673 of 1983. The case is otherwise remarkable in that both at trial and on this appeal the defendant has taken an active part in representing himself, along with counsel.
On this appeal we are presented numerous assignments of error, including challenges to evidentiary rulings, the prosecuting attorneys' final argument, and a curious claim of ineffective assistance of counsel. For the reasons set forth below, we find these assignments of error without merit and affirm.

II.
On November 18, 1983, at approximately 3:00 a.m. B.G., an adult female, left the Stardust Club in Northwest Jackson where she had been socializing with friends. She drove the short distance to her home, an apartment complex off Forrest Avenue. As she turned into the entrance of her apartment complex, her car was suddenly blocked by another vehicle. A black male in his mid-forties with a full beard emerged from this vehicle and dragged B.G. by her hair from her car. She was dragged across the parking lot struggling and fighting violently with her assailant until she lost consciousness for an unknown period of time. When B.G. regained consciousness, she was in the back seat of her attacker's car in a wooded area off Forest Avenue. He continued to beat her severely, tore off her clothes, and raped her.
After the assault B.G.'s attacker drove her back to her apartment in the early morning daylight hours. As she gathered her clothes and belongings from the back of his car, her assailant informed her that he had her watch; this watch was later given to police by a woman who had received the watch from James Wright Knox, Jr., Defendant below and Appellant here. Because her attacker was still present, waiting and watching, and had told her he would come back for her, B.G. went to the apartment of her neighbors, Shelene and Jarrett Roseborough, instead of to her own. B.G. had been beaten almost beyond recognition. A few minutes after B.G. arrived, the three heard a knock on Roseborough's door which they did not answer. The Roseboroughs determined that the assailant's car was still in the parking lot; therefore, they assumed it was he who was knocking. The Roseboroughs then called the police, who took B.G. to the hospital.
About one week later on November 26, 1983, James Knox, posing as an FBI agent, reappeared at B.G.'s apartment complex and questioned a neighbor in an apparent attempt to locate her. Both Jarrett Roseborough and neighbor Larry Gordon, who saw Knox on this day, identified Appellant Knox as the inquirer. The next day, November 27, 1983, the Roseboroughs again accidentally encountered Knox at a nearby local business. Recognizing Knox and his car, the Roseboroughs circled the block, got Knox's license tag number, and telephoned police, who apprehended Knox. B.G. positively identified Knox from a photograph layout at the police station.
On March 5, 1984, Knox was charged with the crime of rape in an indictment returned by the Grand Jury for the First Judicial District of Hinds County, Mississippi. The case was called for trial in Circuit Court sitting in Jackson on July 26, 1984. As will appear significant hereafter, Knox was represented by Hermel Johnson, an attorney in Jackson, Mississippi, and in addition participated actively in his own defense. At the conclusion of the trial the jury returned a verdict of guilty and fixed his punishment at life imprisonment. Miss. Code Ann. § 97-3-65 (Supp. 1986). Following denial of his motion for a new trial, Knox has appealed to this Court.

III.
Knox assigns as error the Circuit Court's refusal to allow him to cross-examine B.G., the complaining witness, with respect to whether a shooting occurred at the Stardust Club. The point arose at trial in the context of Knox's effort to explain why blood was found in the backseat of his car. Knox argued that he had transported injured people to the hospital as a consequence of a shootout at the Stardust Club.
*674 When Knox tried to elicit from B.G. on cross-examination that a shootout had occurred at the Stardust Club while she was there, the State twice objected and both times the objection was sustained. Yet the prosecuting attorney in closing argument referred to the absence of witnesses to support Knox's explanation of the shootout occurrence. Knox contends that to allow the prosecution to prevent the introduction of evidence on grounds of relevancy and then to argue that the absence of such evidence implies guilt is reversible error.
Our law of necessity affords the trial judge broad discretion in admitting or excluding evidence. See Rules 401-403, Miss.R.Ev. To be sure, the Circuit Court would hardly have been in error had it allowed Knox's attempt at cross-examination. The evidence Knox says the jury never heard was in fact presented through direct and cross-examination of Hazel Thompson, Knox's live-in girlfriend, who appeared as a witness for the prosecution. Through Thompson, Knox was given ample opportunity to develop his explanation of why blood was in the backseat of his car. In this context, the Circuit Court's error, if any there be, is hardly such that it rises to the dignity of reversible error. See Wilson v. State, 390 So.2d 575, 577-78 (Miss. 1980).
The assignment of error is without merit and is denied.

IV.
Knox challenges various aspects of the closing argument presented to the jury by the prosecuting attorneys. The general theme to all of the challenges is that argument was made regarding facts not in evidence, a matter all know proscribed notwithstanding the broad latitude we afford counsel in final argument. Johnson v. State, 416 So.2d 383, 391-92 (Miss. 1982); Gray v. State, 351 So.2d 1342, 1346-47 (Miss. 1977).

A.
First, complaint is made of Prosecuting Attorney Hewes' argument to the effect that Knox "knew too much." The point arises against the backdrop of the fact that Knox personally cross-examined the victim, B.G. The argument under attack, as reflected by the record, reads as follows:
Now, did you get the impression maybe during some of the defendant's questioning yesterday that he knew a little too much about this crime? Did he use the word "I" a little too much? Did you get the impression that, although ... [B.G.] did not remember picking up her purse and taking it to his car, that he knew it was there? Because he took it. Because he put those keys in her purse after he had knocked her unconscious and put it in his car. Did you hear him say: "I drive a Catalina?" I don't know much about cars but I know there is not much difference in a Bonneville and a Catalina. I know anybody who knows anything about cars could have mistaken this picture for a Catalina or a Bonneville either one.
Did you hear him say to ... [B.G.]: "Could you see the clothes I was wearing?" Do you think he knew a little bit too much about where the blood was placed? Whether or not there was any on him? Who else in the word would know whether or not he kissed ... [B.G.]? Who else in the world would know but the man who beat and raped her? He knew, ladies and gentlemen.
Knox's reasoning is a bit strained. He says this argument violated the rule that an attorney cannot comment upon matters not in evidence. The unusual circumstance that takes this case out of the general rule is that Knox personally conducted the cross-examination of B.G. which, to be sure, was his right. He cross-examined exhaustively, presenting to the jury his side of the case and covering some eighty pages in the record before us. In the course of that cross-examination, quite arguably, Knox asked questions which likely would not have been asked by one not having considerable familiarity with the events of November 18, 1983. He used the word "I" in context quite arguably suggesting *675 he was present on the occasion in question.
Without doubt one such as Knox has the right to participate in his trial and to question the prosecuting witness. Miss. Const. Art. III, § 26 (1890). When he does so, he should be aware of the skill required to ask penetrating questions on cross-examination without conveying personal knowledge of the events at issue.[1] Where, as here, the defendant quite arguably "knew too much," he will not be heard to complain when the prosecuting attorney in closing argument suggests that inference to the jury. See Jones v. State, 381 So.2d 983, 994 (Miss. 1980).

B.
Knox further charges improper conduct on the part of the prosecuting attorneys in that, during closing argument to the jury, each expressed her personal opinion regarding his guilt. The record reflects that, during closing argument, opening for the prosecution, Assistant District Attorney Hewes stated:
There's no question in my mind that he's the individual who committed this crime and I'm sure there's not in yours.
Thereafter, Assistant District Attorney Bennett opined: "We know he's guilty." No objection was made to either of these arguments.
Our context is provided by Disciplinary Rule 7-106(C)(4) which, in pertinent parts, states as follows:
In appearing in his professional capacity before a tribunal, a lawyer shall not ... assert his personal opinion ... as to the guilt or innocence of an accused; ... .
Our law has long been to this effect. Tubb v. State, 217 Miss. 741, 745, 64 So.2d 911, 912 (1953); see also United States v. Shaw, 701 F.2d 367, 391 (5th Cir.1983). A moment's reflection reveals that this is but a logical extension of the rule that attorneys should restrict their arguments to the testimony and documents and other evidence which have been presented to the jury. See Anderson v. State, 381 So.2d 1019, 1023 (Miss. 1980); McCaskill v. State, 227 So.2d 847, 852 (Miss. 1969). These two statements by the prosecuting attorneys constitute in each instance a single sentence in the middle of arguments otherwise well tailored to the evidence. As there was no objection from Knox nor his attorney, it seems unlikely that these statements were noticed, much less remembered by the jury. We may not predicate reversal thereon.

C.
Next Knox complains that Assistant District Attorney Hewes improperly argued lack of remorse. Reference here is to the statement Hewes made at the end of her argument
And that's the same individual who sat up here all day yesterday and put ... [the victim] through that kind of cross-examination and talked about that incident like he never knew a thing about it  like in his own mind he could remove himself from any guilt or remorse about that behavior. [Emphasis supplied]
Again, no objection was made by Knox or his attorney.
In Reed v. State, 197 So.2d 811, 815-16 (Miss. 1967) the Court held improper argument of the prosecuting attorney calling the jury's attention to the fact that the defendant sat in the courtroom and showed no emotion, the implication being that, for that reason, he must be guilty. Reed is certainly the law in this state, particularly in a case where the defendant has not taken the witness stand in his own behalf. Under the peculiar circumstances of this case, however, where the accused did not sit silent but personally subjected the victim to extensive cross-examination, his appearance and demeanor being very much a part of the information the jury received at trial, we cannot say that the argument in question was improper.

*676 D.
In the final analysis Knox charges that the prosecuting attorneys in final argument abused their duty of fairness, citing Wilson v. State, 433 So.2d 1142, 1145 (Miss. 1983), wherein this Court chastised prosecuting attorneys for making improper and prejudicial remarks in argument which created error regardless of how well the trial had been conducted. Knox claims that, although the trial judge took great care to make certain the defendant was accorded his rights, the prosecution took advantage of the fact that Knox, conducting his own defense, was unlearned in the procedural requirements of the law. Because the State ignored its duty of fairness, asserts Knox, his case should be remanded for a fair trial as stipulated in Wilson v. State.
We have reviewed final argument tendered by the prosecution as a whole, as we consider this collection of assignments of error as the most serious Knox has presented to us today. The erroneous arguments, if any there be, are but two: the offering of a personal opinion of Knox's guilt and the suggestion that the jury consider his lack of remorse. In the context of the entire argument these comments take on a de minimis quality. We have refused to reverse in the context of final prosecutorial argument considerably more inflammatory than that before us today. When coupled with the absence of any objection at trial on the part of Knox or his attorney, these conclusions convince us that Knox's assignment of error should be denied.

V.
Appellant Knox alleges that he was denied effective assistance of counsel because his attorney failed to make objections to the argument of the prosecuting attorney. Although Knox does not specify what objection should have been made, the reader can guess that Knox refers to the lack of objection to the prosecution's closing argument.
The standard for proving ineffective assistance of counsel makes the charge difficult to establish, and appropriately so. Set forth in Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and recognized by this Court (see, e.g., Leatherwood v. State, 473 So.2d 964 (Miss. 1985); Lambert v. State, 462 So.2d 308 (Miss. 1984); Stringer v. State, 454 So.2d 468 (Miss. 1984)), the test advocated in Strickland has two components: the defendant, who bears the burden of proof, must show (1) that his counsel's performance was so deficient that he was not functioning as counsel as guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense to the extent of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. See 462 So.2d at 316-17.
Knox, with his vague allegations of failure of his attorney to object, comes nowhere near meeting this difficult burden of proof. This is particularly so where, as here, Knox personally assumed much of the responsibility for conducting his defense. This assignment of error is devoid of merit. See Read v. State, 430 So.2d 832, 841-42 (Miss. 1983).

VI.
Knox has assigned five additional errors, to-wit:
"(4) The Appellant was denied a preliminary hearing.
(5) The Appellant was denied the opportunity to appear in a line-up.
(6) No pre-trial motions were filed on behalf of Appellant.
(7) The Appellant was denied compulsory process to call defense witnesses.
(8) The jury was voir dired over and against the repeated objections of the Appellant's concerns."
We have carefully considered each of these points. In each instance the law is well settled contrary to the view argued by Knox, and/or the facts before us do not even come close to establishing a grounds for reversal. Under the circumstances there is no need for extended discussion.
*677 See Burkett v. State, 484 So.2d 1046 (Miss. 1986); Smith v. State, 484 So.2d 364 (Miss. 1986); and Morea v. State, 329 So.2d 527 (Miss. 1976). Accordingly, Knox's Assignment of Errors Nos. 4, 5, 6, 7 and 8 are denied.
CONVICTION OF RAPE AND SENTENCE OF LIFE IMPRISONMENT
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] As with others who have tried to represent themselves, Knox may well have had a fool for a client. W.H. Hopper & Associates, Inc. v. DeSoto County, 475 So.2d 1149, 1153 (Miss. 1985).