552 So.2d 1383 (1989)
Jerome SAYLES
v.
STATE of Mississippi.
No. 07-58752.
Supreme Court of Mississippi.
November 8, 1989.
*1384 Melvin H. McFatter, Port Gibson, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Between 6:00 o'clock p.m. on December 31, 1986, and the morning of January 2, 1987, Reed's Grocery in Pattison, Mississippi, was burglarized. Jerome Sayles was arrested, indicted, tried and convicted in Claiborne County, Mississippi, for the crime of burglary and sentenced to a term of five (5) years imprisonment. He is presently at large on a $30,000 bond.
When Leona Reed arrived at her store to open for business on January 2, 1987, she noticed that it had been broken into. She found a board approximately twelve feet long propped up against the store that reached the back vent which apparently was used to gain access into the store. Who removed the board and its whereabouts are unknown, however, a similar board was found nearby at the post office. It was photographed and introduced as an exhibit.
The missing items from the store include: thirty cartons of cigarettes, five cases of Bud, three cans of hair spray, ten decks of playing cards, two boxes of cigarette paper, two or three slabs of bacon, canned goods, two chain saws, one hundred forty dollars, and three men's watches.
The state's eyewitness, one Elbert McDaniels, was on duty at the fire station during the early morning hours of January 2nd. Elbert and Sayles have known one another for thirteen or fourteen years. McDaniels testified that the defendant Jerome Sayles and a juvenile, Lee Savage, *1385 came by the fire station, approximately sixty yards from Reed's store, around 1:00 a.m. and announced they intended to burglarize the Reed store. Elbert then watched as they left the station and went over to the store and broke in. Elbert did not report Sayles to the police. It was only after the Sheriff questioned Elbert that he told his story to the law enforcement.
At trial Sayles testified that Lee, the sixteen year old, was 5 feet tall and that it would have been physically impossible for him to boost Lee up to the vent 12 feet from the ground.
Elbert stated that he was standing on the front porch of the station and had a clear and well-lighted view of the back of the store. He did not, however, see the board propped against the back of the store. Elbert's version was that Sayles helped Lee go through the back vent by boosting him on his shoulders, then Sayles went around and entered through the front of the store. Elbert testified that he last saw Sayles and Lee walk by the station "kind of like in a hurry," carrying two sacks.
Later in the day on January 2, 1987, Sayles sold two watches, one to Mrs. Eddie Bethel, and one to Alexander Jackson. These watches were recovered and identified at trial by the store owner as the same brand and type that had been stolen from her store. No other items were recovered from Sayles after his arrest.
Sayles testified that he was at the scene of the burglary and sold the watches to Mrs. Eddie Bethel and Alexander Jackson but in no way aided, abetted or otherwise assisted Lee in committing the burglary. Sayles' story is that he came along shortly after the burglary of the grocery and Lee recruited him by offering to pay him thirty-five dollars to help carry two sacks that Lee pulled out of the bushes, so Sayles complied. A few days later Lee confessed to Sayles that he burglarized the store alone, gaining access to the back vent by propping the board up against the store. Interesting enough Lee was not called as a witness by Sayles or the state.
Sayles' explanation about the two stolen watches was that the day after the burglary Lee gave them to him to pay off a twenty dollar debt owed to Sayles and that he neither knew where the watches came from nor did he ask.

I.

DID THE TRIAL COURT ERR IN RESTRICTING CROSS-EXAMINATION OF ELBERT AND IN REBUKING DEFENSE COUNSEL IN THE PRESENCE OF THE JURY FOR ATTEMPTING PROPER CROSS-EXAMINATION OF ELBERT REGARDING HIS BIAS AND PREJUDICE AGAINST DEFENDANT?
Sayles poses three instances where the trial court allegedly erred in sustaining objections during the cross-examination of the State's eyewitness, Elbert. The court ruled that the matters inquired about were irrelevant, the substance of which includes: (1) Elbert's eye sight as evidenced by a recent traffic accident; (2) Elbert's bias and prejudice against Jerome because of a sexual affair between Elbert's wife and Sayles; and (3) Elbert refused to discuss the case prior to trial with defense counsel, as the same related to the veracity of his statement at trial.
The prosecutor cites Shearer v. State, 423 So.2d 824 (Miss 1982), and contends that a trial judge has considerable discretion in determining the relevancy and admissibility of evidence. This is undoubtedly true but the prosecution has misapplied Shearer, which stands for the usual standard of relevancy as applied to testimony offered on direct examination. The function of relevancy in evaluating the "credibility" of the witness' direct testimony, is not relevancy to the main issue but relevancy in assessing the probative value of the direct testimony by evaluating the witness' credibility.
Mississippi allows wide-open cross-examination of any "... matter affecting the credibility of the witness." M.R.E. 611(b). A witness on cross-examination may be interrogated *1386 regarding his interest, bias or prejudice in a case. Hill v. State, 512 So.2d 883 (Miss. 1987). The same rule is provided in Miss. Code Ann., Section 13-1-13 (1972).
Sayles was entitled to full and adequate cross-examination of Elbert. However, cross-examination on an irrelevant point is not permitted. The scope of cross-examination though ordinarily broad, is within the sound discretion of the trial court and the trial court possesses inherent power to limit cross-examination to relevant matters. Pace v. State, 473 So.2d 167 (Miss. 1985); Dozier v. State, 257 So.2d 857 (Miss. 1972).
Against this background we test the three complaints of Sayles. Sayles first attempted to impeach Elbert by trying to show a deficiency in his eye sight. This exchange followed:
Q. BY MELVIN McFATTER: Isn't it a fact that about a year ago right in front of Reed's Store you pulled out in front of a highway patrol car because you didn't see it?
BY MR. PATRICK: Objection. That's irrelevant.
BY THE COURT: Sustained.
BY MR. MCFATTER: Your Honor, we feel it's relevant to his ability to see.
BY THE COURT: I sustained the objection, Mr. McFatter.
The awkward form of the question by counsel for Sayles renders this portion of his assignment of error without merit. If properly predicated Sayles could have cross-examined Elbert on the deficiency of his eyesight. However, the issue was not properly predicated and it was irrelevant to the issue in this case whether Elbert pulled out in front of a police car or not.
Sayles tried to impeach Elbert by showing that he had a personal grudge against Sayles on account of an alleged affair between Sayles and Elbert's wife. This exchange followed:
Q. BY MR. MCFATTER: Isn't it a fact, Mr. McDaniel, that Defendant, Jerome Sayles, used to fool around with your wife, Johnie Pearl, 
BY MR. PATRICK: Objection.
BY THE COURT: Sustained.
A. (Laughter by Mr. McDaniels)
Q. You don't have any reason to be lying on him, do you?
A. No. I don't.
Here the trial court erred. If Sayles had an affair with Elbert's wife it is relevant to a "matter affecting the credibility" of Elbert as a witness. M.R.E. 611(b).
Evidence that Sayles had an affair with Elbert's wife is probative of the bias of the witness and hostility toward the defendant. This should have been developed, if possible, through cross-examination to shed light on the direct testimony of Elbert.
Lastly, Sayles tried to impeach Elbert by showing a lack of veracity because he refused to discuss the matter with defense counsel prior to trial. The following exchange occurred:
Q. BY MELVIN McFATTER: You do recall, I believe you testified when I came out in January to the fire station, I told you I was Jerome's attorney and I wanted to talk to you about what you were going to testify to. You recall that don't you?
A. That's right
Q. And you refused to talk to me, didn't you?
A. Yes I did.
Q. Is that because you knew you were lying and didn't want me to catch you in it?
BY MR. PATRICK: Objection.
A. No, it was because 
BY MR. PATRICK: Objection.
BY THE COURT: Sustained.
The trial judge was correct in excluding this evidence as irrelevant. Elbert's refusal to talk to an attorney prior to trial is not indicative of lack of veracity. The criteria of relevancy to shed light on the credibility of the witness and his direct testimony is *1387 vague. However, Elbert's refusal to speak with defense counsel is not relevant to "credibility."
It is not enough to say that the judge erred in limiting the scope of cross-examination unless it can be shown that the error was a reversible one. A judge has wide discretionary control over the extent of cross-examination but the arbitrary curtailment upon a proper subject of cross-examination may be grounds for reversal. Suan v. State, 511 So.2d 144 (Miss. 1987). Also, under M.R.E. 103(a), before error can be predicated at all upon an adverse evidentiary ruling it must appear that a substantial right of the party is affected.
The judge's action in denying cross-examination on the matter concerning the alleged affair did infringe on the right of cross-examination. This substantially affected the right of Sayles to impeach Elbert.
In Hill v. State, 512 So.2d 883 (Miss. 1987), and Suan v. State, 511 So.2d 144 (Miss. 1987), this Court reversed the trial court because there was a curtailment of cross-examination of the prosecution's chief or principal witness. Both cases deal with the trial court's denying defense counsel impeachment of the eyewitness by trying to show bias.
Here defense counsel was trying to show bias and prejudice on the part of the State's eyewitness because of a grudge caused by an alleged affair between the defendant and the witness' wife. The prosecution relied heavily on Elbert's testimony. The only other evidence introduced was that Sayles had possession of the stolen watches. We may only speculate what a jury might have done had it been apprised of the circumstances concerning Elbert's direct testimony and his possible motive to perhaps slant his testimony against Sayles.
The evidence of the prosecution was largely circumstantial, with the exception of Elbert. The denial of this right to a broad and extensive cross-examination of Elbert substantially affected the rights of Sayles.
Not only is this right secured by evidentiary rules, it is a function of the confrontation clauses of federal and state constitutions. Suan v. State, 511 So.2d 144, 148 (Miss. 1987). The accused in a criminal trial has a fundamental right, implicit in the confrontation clauses of our state and federal constitutions, to cross-examine witnesses testifying against him. U.S. Const. Amend. VI; Miss. Const. Art. 3, Sec. 26; Foster v. State, 508 So.2d 1111 (Miss. 1987).
The prosecution contends, however, that even if the cross-examination was improperly excluded reversal is not warranted because Sayles testified about the alleged affair and it would only have slight relevancy anyway because the affair took place some two to five years ago. In this position the prosecution relies upon Knox v. State, 502 So.2d 672 (Miss. 1987). This is a misapplication of Knox, which is clearly distinguishable. Knox deals with evidence for evidence sake, not evidence for the purpose of impeaching the credibility of a witness. The jury heard the evidence in Knox and the source from which it came had no bearing. In this context, the error would hardly rise to the dignity of reversible error.
However, the source of the evidence in the prosecution's case against Sayles is of primary concern. Sayles was trying to elicit the effect his alleged affair had on Elbert and therefore on his credibility. Only Elbert's testimony could establish this, not Sayles' own testimony. That is the primary purpose for allowing cross-examination to impeach a witness' credibility.
The state relies on Pace v. State, 473 So.2d 167 (Miss. 1985), in their contention that the error is only marginally relevant, because of the time that had elapsed between the affair and trial, and therefore the exclusion was not error. In Pace, the witness testified that she was scared of the defendant because of information he knew which would ruin her marriage. We upheld in that case the trial court's denial of *1388 cross-examination of the state's witness, deferring to the trial court's discretion and because "we do not think a detailed exploration of embarrassing events in the witness' past would have been of probative value." Id. at 169.
In this case, however, the denial of cross-examination dealt with a probative matter as to credibility and that denial substantially affected Sayles' rights. The contention that the affair took place some two to five years ago would not make cross-examination marginally relevant. It is still likely that Elbert could or would have a grudge against Sayles, and this question should be determined by the jury.
As to the assignment that the trial judge rebuked defense counsel in the jury's presence, therefore showing bias and prejudice against the defendant, the exchange complained of is included below.
BY THE COURT: Mr. McFatter, the court does not desire to rebuke an attorney now, but if you insist along this line I'm going to have to.
BY MR. MCFATTER: Your Honor, I believe that I should be permitted to go into any reason that this witness would have to fabricate or prejudice his testimony against my client. That's the only purpose that I was 
BY THE COURT: I sustained the objection. Let's move on.
BY MR. MCFATTER: Yes sir.
The next morning, the trial judge stated the following in the record:
Ladies and gentlemen of the jury, I would like to explain my remarks made to Mr. McFatter yesterday during the testimony of Elbert McDaniels. It had been a long and tiring day and we had just finished a two and half or three day trial. Although this is no excuse, I would like to offer my apologies to Mr. McFatter. Can each of you assure me that you can disregard the remarks and not let them influence you in any way in your decision?
All the jurors responded affirmatively.
While the rule of law cited by Sayles in Thompson v. State, 468 So.2d 852 (Miss. 1985), is a correct statement, it does not apply to the factual situation in the case at bar. Sayles' argument is circular. He asserts that the judge's threat to rebuke counsel if he continued to pursue matters on cross-examination were comments with the weight and dignity of the court behind them. On the other hand he ignores the explanatory statement and the apology and the affirmative response of the jury on the following morning.
Assuming the trial judge's remarks were error, the judge cured this error by instructing the jury to disregard his statements. Parker v. State, 401 So.2d 1282 (Miss. 1981), and Harmon v. State, 453 So.2d 710 (Miss. 1984).

II.

DID THE TRIAL COURT ERR IN GRANTING THE STATE'S INSTRUCTION S-4 AND IN REFUSING THE DEFENDANT'S INSTRUCTION D-13?
Sayles argues that Instruction S-4 was improper because the evidence did not support it and the instruction stated abstract principals of law and was not tied to the facts of the case. Instruction S-4 was as follows:
The court instructs the Jury that one who aids, abets or otherwise assists another person or others in the commission of a crime is just as guilty as if he committed the crime himself.
If the Jury from the evidence believes beyond a reasonable doubt that Jerome Sayles the Defendant did aid, abet or otherwise assist another in the breaking and entering of Reed's Grocery the property of Clovis Reed then you shall find the Defendant Jerome Sayles guilty of burglary.
Sayles' first contention is that this instruction is an accessory-before-the-fact instruction normally given when there is evidence that the Defendant, while not actually present at the scene of the crime, somehow helped plan the crime or otherwise aided or abetted another in the commission *1389 of the crime. The principal danger that Sayles asserts is that the jury could wrongfully construe that Sayles was guilty of burglary on his testimony that he assisted Lee after the burglary had already been committed.
The general rule is that all instructions should be supported by evidence. Brazile v. State, 514 So.2d 325 (Miss. 1987). On this record the evidence suggests that Sayles may have been guilty of three possible courses of criminal conduct; principal, accessory after the fact to burglary, or receipt of stolen property. Elbert testified that he saw Sayles boost Lee into the store and then go to the front of the store. Sayles' testimony was he helped carry the stolen goods, and two of the state's witnesses testified that Sayles sold them stolen property.
There was no evidence to support an instruction of accessory-before-the-fact. However, Sayles' assertion that instruction S-4 is an accessory-before-the-fact instruction is not correct. An accessory-before-the-fact "is one who procures, counsels or commands another to commit a felony for him, but is not himself present, actually or constructively, when the felony is committed." Huff v. Edwards, 241 So.2d 654 (Miss. 1970).
S-4 is an instruction dealing with "aiders and abettors." Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an "aider and abettor" and is equally guilty with the principal offender. Bullock v. State, 391 So.2d 601 (Miss. 1980), cert. denied, 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981).
S-4 merely instructs the jury about anyone who aids and abets another in the commission of a crime. It does not instruct the jury about one who procures, counsels, commands, or aids and who is not present at the commission of a crime.
The primary distinction between the accessory-before-the-fact and an aider and abettor is the actual or constructive presence of the party. If a person was actually or constructively present at the offense, due to his participation he is an aider and abettor. Walters v. State, 218 Miss. 166, 65 So.2d 465 (1953). If he was not present, he is an accessory-before-the-fact. Clemons v. State, 482 So.2d 1102 (Miss. 1985). See generally Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law, Sec. 6.6(b) at 128 (West, 1986); 22 C.J.S. Criminal Law, Sec. 132 (1989).
The facts in this case support the prosecution's aiding and abetting instruction. Elbert's testimony placed Sayles at the scene of the crime.
As to the contention that the jury could incorrectly apply the instruction to convict him on his testimony that he helped Lee after the burglary, instruction D-9 should have dealt with this contention. However, D-9 was confusing and did not properly address the fact that Sayles could not be found guilty based on his testimony. The problem is with D-9 and not S-4. D-9 states in part as follows:
Even though you, the jury, may be able to say from the evidence in this case beyond a reasonable doubt that the Defendant, Jerome Sayles, is guilty of being an accessory after the fact of burglary or that of receiving stolen property, you may not return a guilty verdict in this case ...
Sayles' second contention is that S-4 is couched entirely in terms of abstract principals of law, and does not set forth any facts at all upon which the jury could apply the rule of law announced therein. See Kidd v. State, 258 So.2d 423 (Miss. 1972). However, the instruction did apply the facts to the law in the second paragraph. Furthermore we have held in Pickett v. State, 443 So.2d 796 (Miss. 1983), that when abstract instructions could not confuse or mislead the jury the granting of such does not constitute reversible error.
S-4 is not totally couched in abstract terms and when read with all the other *1390 instructions is not confusing or misleading. The trial court was not in error in its decision on Instructions S-4 and D-9.

WAS IT ERROR TO REFUSE INSTRUCTION D-13?
Instruction D-13 was offered by Sayles as follows:
An accomplice is some one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime. If you believe the evidence beyond a reasonable doubt that the Defendant, Jerome Sayles, did knowingly, voluntarily and with common intent with Lee Frank Savage unite in the commission of the burglary of Reeds Store, then it is your sworn duty to find the Defendant, Jerome Sayles, guilty of burglary.
However, if you believe from the evidence beyond a reasonable doubt that the Defendant, Jerome Sayles, merely come along after Lee Frank Savage had committed the burglary and assisted Lee Frank Savage in transporting the stolen goods and took possession of some of the stolen goods, but have a reasonable doubt that the Defendant, Jerome Sayles, voluntarily and with common intent with Lee F. Savage unite in the actual commission of this burglary of Reed's Store, then it is your sworn duty to find the Defendant, Jerome Sayles, not guilty.
Sayles had requested that the trial court grant instruction D-13 and refuse both State's instruction S-4 and defense instruction D-9. The trial court, however, granted instructions D-9 and S-4 and refused D-13. The prosecution asserts that the gist of D-13 is covered by S-1 and S-4 and D-9. S-1 states as follows:
The Court instructs the Jury that if you believe from the evidence beyond a reasonable doubt that the Defendant, Jerome Sayles, did feloniously break and enter Reed's Grocery, in Pattison, Mississippi, the property of Clovis Reed, in which building was located the property of Clovis Reed, with the intent of Jerome Sayles to steal therein, then it is your sworn duty to find the Defendant, Jerome Sayles, guilty of Burglary.
When one reads Instructions S-1, S-4, and D-9, confusion results. Instruction D-13 should have been granted as it is a proper statement of the law and is the only instruction that presents Sayles' theory of the case to the jury. He is entitled to have the theory of his defense presented. D-9 states as follows:
Even though you, the jury, may be able to say from the evidence in this case beyond a reasonable doubt that the Defendant, Jerome Sayles, is guilty of being an accessory after the fact of burglary or that of receiving stolen property, you may not return a guilty verdict in this case unless the State has proved from the evidence in this case beyond a reasonable doubt that the Defendant, Jerome Sayles, is guilty of each and every material element of the crime of burglary of the Reed Store building. (Emphasis Added).
Therefore, it was reversible error not to grant Instruction D-13 because D-9 and S-4 do not accomplish the same purpose in a clearer manner to squarely put the issue before the jury. S-4 and D-9 might have accomplished the objective if D-9 would have stopped at the underlined portion indicated above but it did not, and S-4 and D-9 in conjunction therefore do not fully and fairly instruct the jury. They are confusing and abstract and could have led the jury to believe that it could convict Sayles based on the wrong evidence presented at trial.
For the reasons set forth above, the burglary conviction and sentence of five years' imprisonment in the Mississippi Department of Corrections is reversed and the case is remanded to the Circuit Court of Claiborne County.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.