801 So.2d 751 (2001)
Clarence `Bohead' JONES a/k/a Bohead Jones, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00848-COA.
Court of Appeals of Mississippi.
June 26, 2001.
Order After Remand December 11, 2001.
*753 Kevin L. Howe, Calhoun City, for Appellant.
Office of the Attorney General by Scott Stuart, for Appellee.
Before KING, P.J., PAYNE, LEE, and CHANDLER, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. Clarence "Bohead" Jones was indicted by the Calhoun County Grand Jury for possession of cocaine with intent to sell, simple assault upon a law enforcement officer, and aggravated assault upon a law enforcement officer. He was tried before a jury which found him guilty of possession with intent to sell and not guilty of the simple and aggravated assault of a law enforcement officer. Jones was sentenced to thirty years with ten years suspended and fined $10,000. He now directly appeals his conviction of possession of cocaine with intent to sell. The Court remands for further proceedings consistent with this opinion.

FACTS
¶ 2. On April 20, 1996, Patrolmen Dean Washington and Larry Hollis received a call that three men were at a convenience store and one was acting really nervous. When Jones saw the police car drive up, he left the store quickly, without waiting to get his order. Jones drove off in a vehicle, accompanied by the two other men, and went over a hill on the wrong side of the road. Washington turned on his lights and attempted to stop the car. Jones did not stop and Washington pursued him. One of the passengers, Emanuel Jackson, allegedly asked Jones to stop because he did not want to go back to jail. Jackson testified that Jones's response was that he could not stop because he had drugs on him. During the pursuit, the two vehicles collided and Jones lost control, winding up in a ditch. Jones ran and Washington chased him. The other passenger, J.L. Wright, also ranin a different direction. Washington saw Jones throw something onto the pavement, stop, turn around and allegedly point a pistol at Washington. Washington shot into the air and told him to stop. Jones ran off and Washington lost sight of him. When Washington returned to the wrecked vehicle, Hollis had Jackson in the police car. Washington found a substance later determined to be cocaine on the pavement, along with a black handled knife and some money. Other officers searched the area, finding a plastic bag containing more cocaine rocks on the bank of the ditch.
¶ 3. Jones was indicted on November 21, 1996. Sonny Clanton was appointed on December 6, 1996, to represent Jones. Clanton withdrew as counsel on January 10, 2000, after being appointed as the attorney for the Calhoun County Board of Supervisors. Kevin Howe was then appointed to represent Jones on January 21, 2000. Howe was unable to locate Jones until April 25, 2000. He at first thought that Jones was in jail and had a Writ of Habeas Corpus Ad Prosequendum issued. Howe then wrote Jones at his last known address, and finally located him by subpoena. On April 25, 2000, Jones filed a pro se motion to dismiss for failure to provide a speedy trial. He had previously filed a motion, on December 1, 1997, asking for Clanton to be removed as his attorney. *754 He also filed a motion on October 15, 1998, to dismiss for lack of a speedy trial. Apparently, Clanton had been unable to locate some of Jones's witnesses and had asked for and received several continuances. The court heard and denied Jones's motion to dismiss for lack of a speedy trial on April 25, 2000, and set the case for May 3, 2000. Howe filed a motion for continuance on April 27, claiming that eight days was insufficient time for him to prepare Jones's defense, especially since there were three separate counts and several unlocated witnesses. The motion for continuance was presented on May 3, 2000, and denied. Jones was tried, convicted of possession with intent, and sentenced on May 4, 2000. He filed a motion for JNOV or a new trial, which was denied on May 11, 2000.

ISSUES PRESENTED

STANDARD OF REVIEW
¶ 4. Jones presented the following four issues on appeal:
I. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO DENY JONES'S MOTION FOR A CONTINUANCE SINCE HIS ATTORNEY WAS NOT ABLE TO LOCATE HIM AND TALK WITH HIM UNTIL EIGHT DAYS BEFORE TRIAL.
II. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO DENY JONES'S MOTION FOR JNOV OR IN THE ALTERNATIVE A MOTION FOR NEW TRIAL FILED BECAUSE JONES ASSERTS THAT THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
III. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO DENY JONES'S MOTION FOR JNOV OR IN THE ALTERNATIVE A MOTION FOR NEW TRIAL FILED BECAUSE JONES ASSERTS THAT THE STATE ACTED IMPROPERLY BY USING 5 OF THE STATE'S 6 PEREMPTORY STRIKES TO STRIKE EVERY BLACK PERSON BROUGHT UP TO BE CONSIDERED AS A MEMBER OF THE JURY, AS WELL AS USING THE STATE'S ONE PEREMPTORY STRIKE IN CHOOSING ALTERNATES FOR THE JURY TO STRIKE A BLACK PERSON IN A FAILED ATTEMPT TO KEEP ALL BLACK PEOPLE OFF THE JURY.
IV. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO DENY JONES'S MOTION FOR JNOV OR IN THE ALTERNATIVE A MOTION FOR A NEW TRIAL FILED BECAUSE JONES ASSERTS THAT IT WAS REVERSIBLE ERROR FOR THE COURT TO GIVE THE STATE'S JURY INSTRUCTION S2 WHICH INCLUDED A LESSER INCLUDED OFFENSE INSTRUCTION WHEN THE DEFENSE DID NOT FIRST TENDER A LESSER INCLUDED OFFENSE INSTRUCTION IN ITS JURY INSTRUCTIONS.
¶ 5. A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom. Miss.Code Ann. § 99-15-29 (1972). The denial of a continuance will not be error unless the trial court committed an abuse of discretion. Lambert v. State, 518 So.2d 621, 623 (Miss. 1987). To prevail on a claim that the court erred by denying a motion for a continuance, a defendant must show both an abuse of discretion and that this abuse actually worked an injustice in this case. Morris v. State, 595 So.2d 840, 844 (Miss. 1991).

*755 I. CONTINUANCE.
¶ 6. Jones asserts that a reversal is necessary to prevent injustice because it is self-evident that eight days was not enough time for his attorney to prepare a defense against three different, serious charges. Jones also maintains that he was prejudiced by the denial of a continuance because J.L. Wright was not located and served, thus Jones could not call him as a witness. Jones further contends that his acquittal on the assault charges creates a strong presumption that had he been granted a continuance, he would have been acquitted on all three counts. Jones argues that he has set forth concrete facts showing the prejudice he suffered as a result of the circuit court's denial of his motion for continuance.
¶ 7. As Jones points out in his brief, "[M]erely demonstrating the lateness of the hour is not enough. It is incumbent on the defendant seeking such a continuance to show concrete facts that demonstrate the particular prejudice to the defense that will necessarily arise if a delay is not granted." Golden v. State, 736 So.2d 1076(¶ 6) (Miss.Ct.App.1999). He cites no authority, however, for his position that his acquittal on the assault charges creates a presumption that he would have been acquitted on the possession charge had he been given a continuance. "We remain steadfast to rule that failure to cite any authority may be treated as a procedural bar, and we are under no obligation to consider the assignment." McClain v. State, 625 So.2d 774, 781 (Miss.1993) (citations omitted). Jones also does not set forth what evidence Wright could have presented that would have assisted Jones's defense.
¶ 8. The State argues, firstly, that Jones is barred from making this argument because he did not cite it as a ground in his motion for a new trial. "[T]he denial of a continuance in the trial court is not reviewable unless the party whose motion for continuance was denied makes a motion for a new trial on that ground." Metcalf v. State, 629 So.2d 558, 562 (Miss. 1993).
¶ 9. The State does not waive the bar; however, it also argues that Jones did not even suggest what Wright might have said at trial. Therefore, the State contends, it is impossible to determine what prejudice Jones suffered as a result of Wright's absence. The State further argues that Jones's attorney had access to discovery for approximately three and one-half months prior to trial, and could have been examining the evidence and interviewing witnesses without talking to Jones. Finally, the State contends that Jones has not demonstrated that the denial of a continuance caused him any prejudice. Jones's counsel persuaded a jury to return verdicts of not guilty on two counts. Therefore, the State maintains that Jones has not met his burden and this issue is without merit.
¶ 10. Because Jones did not argue this issue in his motion for JNOV or a new trial, he is now barred from doing so. Additionally, he has not shown an abuse of discretion by the circuit court in its denial of Jones's motion for continuance. The lower court is affirmed on this issue.

II. WEIGHT OF EVIDENCE AND SUFFICIENCY OF THE EVIDENCE
¶ 11. Jones argues that the verdict of guilty was against the overwhelming weight of the evidence. However, though he mixes his issues, Jones also argues that the evidence was insufficient. Our standards of review are different and the issues are raised by different motions. *756 We will sort out his arguments accordingly.
¶ 12. Jones cites as an applicable fact that the testimony of Officer Gary Parker, who assisted the initial officers, conflicted with Washington's testimony. Parker testified that the drugs were found thirty to forty yards from Jones's vehicle, while Washington stated that the drugs were found ten to twelve feet from the vehicle. Jones states as important facts that this incident occurred between 9:30 and 9:45 at night, as testified to by Washington, inferring that the darkness hampered Washington's ability to see Jones; parts of the area in which this occurred were high drug traffic areas; and other people besides the suspects were in the area at the time of the incident. Additionally, there were two other people in the vehicle, one of whom also ran away. Jones asserts that the evidence is insufficient to prove that the cocaine belonged to him because it could have been thrown out by Jackson, who stayed at the car, or by Wright, who ran. Washington admitted that he did not know Jones at the time, and Jones was not arrested until approximately two weeks after the incident occurred. Jones contends, therefore, that the evidence is insufficient to show that he was the one whom Washington was chasing. Finally, Jones states that it is important to note that the knife and money allegedly found with the cocaine had been lost and could not be introduced as evidence, although he does not say why it is important under this issue.
¶ 13. As concerning appeals from an overruled motion for JNOV, the McClain court stated:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State.... The credible evidence consistent with [the defendant's] guilt must be accepted as true.... The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.... Matters regarding the weight and credibility of the evidence are to be resolved by the jury.... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain, 625 So.2d at 778 (citations omitted). Jones contends that no reasonable person could have found beyond a reasonable doubt that he was guilty of possession of cocaine with intent to sell.
¶ 14. Officers Washington and Hollis were alerted by a call from a convenience store that three men were in the store, and one was acting nervous. "Under the Fourth Amendment, police officers with reasonable suspicion that an individual has committed or is about to commit a crime may detain that individual, using some force if necessary, for the purpose of asking investigative questions." Kolender v. Lawson, 461 U.S. 352, 367, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). "An investigative stop may be made even where officials have no probable cause to make an arrest as long as they have ... `some objective manifestation that the person stopped is, or is about to be engaged in criminal activity.'" Floyd v. State, 500 So.2d 989, 992 (Miss.1986) (citing McCray v. State, 486 So.2d 1247, 1249-50 (Miss. 1986)).
¶ 15. The facts of Harper v. State, 635 So.2d 864 (Miss.1994), are similar to the present case in that the defendant fled upon the approach of police officers who were patrolling a high crime area. Id. at 865. Unlike in the case sub judice, however, the officers in Harper had not received a call reporting a suspicious person, but *757 rather the officers had merely exited their vehicle to do a "walk-through" of the neighborhood "to reassure residents of their presence and daunt possible criminal activity." Id. Nevertheless, the court found that "there existed reasonable suspicion for the officers to make a brief investigatory stop and that the trial court properly allowed the cocaine recovered from the stop into evidence." Id. In light of the call from the store keeper, Officers Washington and Hollis had an even stronger case for reasonable suspicion to stop Jones.
¶ 16. The State contends that the evidence against Jones supports the verdict. Jones was acting nervous while in the convenience store, prompting the call to the police. He left the store upon seeing the approach of the officers, without making his purchase. Jones fled away in his vehicle, in the wrong lane on a hill, and did not stop for the officers when they flashed their lights at him. Jackson testified that Jones stated that he could not stop for the police because he had "drugs or something" on him. After Jones lost control of his vehicle and wound up in a ditch, Washington saw Jones flee the vehicle and throw something on the pavement as he ran away. The officers searched the area where Jones threw down the items, and found several rocks that proved to be cocaine. They found more in a plastic bag on the bank of the ditch where the car came to rest. The evidence was sufficient.
¶ 17. The issue of the weight of the evidence is tested by a defense motion for a new trial. As stated in McClain:
Matters regarding the weight and credibility of the evidence are to be resolved by the jury....
Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes [Uniform Circuit and County Court Rule 10.05]. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion....
McClain, 625 So.2d at 778-81 (citations omitted). As to any inconsistencies in the testimony of the officers concerning the distance away from the vehicle at which the evidence was found, such conflicts are for the jury to reconcile and do not mandate a new trial. Benson v. State, 551 So.2d 188, 193 (Miss.1989). The jury is charged with the duty of determining credibility between several witnesses. Jackson v. State, 614 So.2d 965, 972 (Miss.1993). The State contends that Jones's argument that Washington could not identify him due to darkness fails because Jones, himself, testified that he was the driver of the wrecked vehicle, and that he jumped out and ran. The argument concerning the possibility that the passengers could have thrown down the cocaine fails because Washington testified that Jones threw something down in the location in which cocaine was found. It is obvious that the jury found the State's witnesses to be more credible than the defendant.
¶ 18. Viewing the credible evidence consistent with Jones's guilt, in the light most favorable to the State, the verdict is not against the overwhelming weight of the evidence, and to allow it to stand would not sanction an unconscionable injustice. The lower court, therefore, is affirmed on this issue.

III. PEREMPTORY STRIKES.
¶ 19. Jones contends that the prosecution used its peremptory strikes to eliminate potential jurors due to their race. The State used five of its six peremptory *758 challenges to strike black jurors, and its one peremptory challenge in choosing an alternate to strike a black juror. Jones maintains that, only because one of the jurors happened to remember something about the case and was excused, the first alternate juror chosen, a black man, was placed on the jury and prevented the jury from being all white.
¶ 20. The circuit court judge should be affirmed when he rules on challenges based on the decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), unless his findings are clearly erroneous. Simon v. State, 679 So.2d 617, 622 (Miss.1996).
Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Under Batson, the defendant must first establish a prima facie case that race was the criteria for the exercise of the peremptory challenge. Stewart v. State, 662 So.2d 552, 557 (Miss.1995). He must show: 1) that he is a member of a cognizable racial group; 2) that the prosecutor has exercised challenges toward elimination of veniremen of the defendant's race; and 3) that facts and circumstances raised an inference that the challenges were used for the purpose of striking minorities. Conerly v. State, 544 So.2d 1370, 1372 (Miss.1989). The striking party then has the burden to state a racially neutral explanation for the challenged strike. Batson, 476 U.S. at 97-98, 106 S.Ct. 1712. If a racially neutral explanation is offered, the contestant may rebut the explanation. Bush v. State, 585 So.2d 1262, 1268 (Miss.1991). Finally, the trial court must make a finding of fact to determine if the defendant has proved purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. 1712. If no rebuttal is made, the judge may base his decision only on the reasons given by the State. Coleman, 697 So.2d at 786.
Magee v. State, 720 So.2d 186, 189 (Miss. 1998) (emphasis added). Jones contends that he has met the foregoing criteria. He is a member of a cognizable racial group, in that he is black. The prosecutor used his challenges against black veniremen. Jones contends that the overwhelming number of strikes used to eliminate black veniremen, along with what Jones deems to be unconvincing reasons, raises an inference that the strikes were used as a pretext to eliminate black jurors because he is black.
¶ 21. The reasons for the challenges given by the State are as follows:
Number 30: Kenneth Mister said he had a brother in the penitentiary and a nephew who had just come out of the penitentiary for drugs, and he did not think they were treated fairly by the judicial system.
Number 22: William Franklin fought the district attorney "like a dog" when they ran for the House of Representatives. "I despise him and he despises me and there is no way that he could be fair in this case and this is the reason I struck him."
Number 53: Mary Golliday was a friend of two defendants tried in drug cases during the immediately preceding two days. The district attorney was afraid she would be mad at him for that reason.
Number 16: Elvis Hall is kin to a deputy sheriff who told the district attorney that Hall uses marijuana, and this case involves drug charges. The court found that the State may base a challenge on interviews of people who knew the juror, and that hearsay rules of evidence do not apply.

*759 Number 6: Thomas Glaspie stated during voir dire of another case that his brother and sister-in-law were in the penitentiary on drug charges. Jones's attorney objected, stating that the reason given did not necessarily indicate whether the juror would be partial or impartial and that a lot of people in a county that small will have someone in the pen. The court stated that it understood, but that the State is only required to give a race neutral reason, not establish anything in addition to that.
Number 4: Sarah Farmer was struck as an alternate juror because she knew and worked with a witness who testified on behalf of a defendant in a drug case tried that same week.
The court accepted all of these reasons and found them to be racially neutral. Jones contends that the reasons given for numbers 53, 16, 6 and 4 show that the prosecution was merely striking each and every black person who came up for consideration. The State argues that "[a]t this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The State contends that Jones did not demonstrate that the peremptory strikes were used for racially motivated reasons, nor show that the State struck blacks while failing to strike whites for the same reasons. The State recognizes "disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge," as an indicia of pretext. Mack v. State, 650 So.2d 1289, 1298 (Miss.1994).
¶ 22. As recently stated by this Court, "[u]nder Mississippi law, the State's use of peremptory strikes against potential jurors who have family members that have been convicted of crimes is completely acceptable as a race-neutral reason and does not violate due process requirements." Myles v. State, 774 So.2d 486, 489 (Miss. Ct.App.2000). See also Griffin v. State, 607 So.2d 1197, 1203 (Miss.1992); Benson v. State, 551 So.2d 188, 192 (Miss.1989). "Striking a juror because of the conviction or charge of a family member is a valid, race-neutral reason to exercise a peremptory strike." Tanner v. State, 764 So.2d 385, 394 (Miss.2000) (quoting Magee v. State, 720 So.2d 186, 189 (Miss.1998)). In Edwards v. State, 737 So.2d 275 (Miss. 1999) (a capital murder and armed robbery case) the State's reason for striking one juror was that he had two felons in his family and had, himself, been previously arrested for possession of marijuana. The court found no merit to the defendant's allegation of error as he had not shown any reason to overcome the presumption of correctness and great deference that is to be given to the finding of the trial court. Id. at 318.
¶ 23. The Mississippi Supreme Court, in Lockett v. State, 517 So.2d 1346, 1353 (Miss.1987), offered an appendix containing racially neutral reasons upheld by other courts in an effort to provide some guidance to the trial courts. The court stated that these are merely illustrative examples. The list includes such reasons as the prospective juror having a friend charged with a crime, having a relative in a contemporaneous criminal proceeding, having a relative in jail, living in a "high crime" area, living near the defendant, or the prosecutor distrusting the juror. Id. at 1356-57.
¶ 24. As seen, the Mississippi courts have previously found the reasons given for striking jurors 30, 53, 16 and 6 to be racially neutral, and this Court sees no *760 reason to find otherwise. Additionally, while the jury was not questioned concerning animosity toward the attorneys, juror number 22, William Franklin, was dismissed due to animosity stemming from a time when he and the district attorney ran for the House of Representatives. This does not appear to be an issue requiring a race-neutral reason, but rather sounds like a cause based objection. This Court, in fact, is puzzled that the district attorney did not request that Franklin be dismissed for cause.
¶ 25. The Court feels more consternation over the reason given for juror number 4, Sarah Farmer. While the courts have upheld the reason of having a friend charged with a crime as racially neutral in a Batson challenge, Farmer's acquaintance with a co-worker who testified on behalf of a defendant in a drug case heard earlier that week, is farther removed. If Farmer, herself, had been a witness on behalf of a drug defendant, this Court would have little doubt that the reason was racially neutral. However, with no indication that Farmer knew the defendant in the previous case, nor of her relationship with the witness, the reason is questionable. Added to the Court's concern over this reason is the fact that juror number 20, Jimmy Caradine, a white juror, stated during voir dire that he knew a State witness in a case heard earlier that week, but was not struck. While the Court understands that the State would have less concern over a juror knowing a State witness in a previous case, this is a similar relationship, and the reason tends to appear more suspect under the circumstances of this case.
¶ 26. Even if each of the reasons given in this case for peremptory strikes were individually non-suspect, the combined result was a white jury, with the exception of one juror, originally chosen as an alternate, who took another jury member's place after she remembered facts of the case and asked to be dismissed. In Johnson v. State, 754 So.2d 1178 (Miss.2000), the Mississippi Supreme Court stated:
This Court has articulated the general law in this state which provides that "it is the duty of the trial court to determine whether purposeful discrimination has been shown," by the use of peremptory challenges. Wheeler v. State, 536 So.2d 1347 (Miss.1988); Lockett v. State, 517 So.2d at 1349.
In considering this issue, we today decide it necessary that trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors.
Johnson, 754 So.2d at 1180 (quoting Hatten v. State, 628 So.2d 294, 298 (Miss. 1993)). The trial court in the case sub judice did not go far enough in its findings. While stating that each reason given for the peremptory strikes was racially neutral, the court did not make an on-the-record finding that the State's reasons were not pretextual. Therefore, because of the result of the peremptory strikes in forming an almost all white jury, this case is remanded for the trial judge to make an on-the-record finding of whether these strikes, considered together, were pretextual.

IV. JURY INSTRUCTIONLESSER INCLUDED OFFENSE.
¶ 27. Jones argues that it was error for the court to allow the State's instruction S-2, which was a lesser-included-offense instruction. He contends that the instruction for a lesser-included offense should not have been given unless he first tendered such an instruction. As authority, Jones cites Sayles v. State, 552 So.2d 1383 (Miss.1989), in which the court reversed and remanded because the defendant's *761 instruction was not given. The court stated:
Instruction D-13 should have been granted as it is a proper statement of the law and is the only instruction that presents Sayles' theory of the case to the jury. He is entitled to have the theory of his defense presented.
Id. at 1390. Jones argues that he has the right to be tried for the crime with which he was charged. Jones was charged with possession of cocaine with intent to sell, transfer or distribute. The lesser-included offense instruction allowed the jury to find him guilty of mere possession. Jones contends that allowance of the State's instruction prevented him from presenting his theory of the case, namely that he was either guilty of possession with intent, or else not guilty at all.
¶ 28. The State contends that the jury was charged with Jones's theory of the case in his instruction, D-2, in which he expressed what he now claims to be his theory of the case. Jones cites no authority supporting his position that it is error for the State rather than the defendant to obtain a lesser-included-offense instruction. This is a somewhat novel argument, but the State argues that the court is under no duty to consider assignments of error when no authority is cited, and the court may treat the issue as procedurally barred. Drennan v. State, 695 So.2d 581, 585-586 (Miss.1997); McClain v. State, 625 So.2d 774, 781 (Miss.1993).
¶ 29. The State also contends that a lesser-included-offense instruction is warranted if a reasonable jury could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser-included offense. Pleasant v. State, 701 So.2d 799, 804 (Miss.1997). The State presented evidence that Jones had cocaine in his possession, and argues that it was for the jury to decide whether the State proved beyond a reasonable doubt that Jones had the intent to sell, or to merely possess the cocaine for some other reason, such as personal use.
¶ 30. Finding no apparent merit or authority for this assignment of error, the judgment as to this issue is affirmed.

CONCLUSION
¶ 31. The judgment of the Calhoun County Circuit Court is affirmed as to issues I, II and IV. The case is remanded for an on-the record finding of whether the State's peremptory strikes, considered together, were pretextual. The judge shall certify his findings to this Court within thirty days.
¶ 32. THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I, POSSESSION OF COCAINE WITH INTENT TO SELL, AND SENTENCE OF THIRTY YEARS WITH TEN YEARS SUSPENDED IS AFFIRMED IN PART. HOWEVER THIS CASE IS REMANDED TO THE TRIAL COURT FOR-ON-THE RECORD FINDINGS AS TO PRETEXT ON THE BATSON ISSUE. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, and MYERS, JJ., concur.
CHANDLER, J., concurs with separate written opinion joined by McMILLIN, C.J., PAYNE, BRIDGES, and THOMAS, JJ.
CHANDLER, J., concurring:
¶ 33. I concur in the entirety of the majority's opinion. I write separately to emphasize that an overall review of the Batson colloquy indicates that the trial *762 judge accepted the State's reasons for its exercise of peremptory challenges as race neutral. If it were not for the supreme court's holding in Johnson v. State, 754 So.2d 1178 (Miss.2000), I would vote to affirm the trial judge's implicit acceptance of the State's reasons for its peremptory challenges as non-pretextual and race neutral. Johnson requires the trial court to "make an on the record factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors." Id. at (¶ 6). Only because the trial judge did not comply with this technical requirement by articulating on the record his acceptance of the State's reasons for the peremptory challenges, Johnson leaves this Court no alternative but to remand for such findings.
McMILLIN, C.J., PAYNE, BRIDGES, and THOMAS, JJ., join this separate written opinion.

ORDER
¶ 1. This matter came before the Court after remand to the Circuit Court of Calhoun County for an on-the-record finding of whether the State's peremptory challenges were pretextual, consistent with the holdings in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and Johnson v. State, 754 So.2d 1178 (Miss.2000). On remand, the circuit court made an on-the-record finding that the State's challenges were not pretextual and certified its findings to this Court. This Court, therefore, finds that the case should be affirmed based on its opinion of June 26, 2001.
¶ 2. THEREFORE IT IS ORDERED that after remand to the Circuit Court of Calhoun County that this case be, and hereby is, affirmed. All costs of appeal are assessed to Calhoun County.
¶ 3. SO ORDERED.
/s/ David A. Chandler
DAVID A. CHANDLER, Judge
FOR THE COURT
BRANTLEY, J., not participating.
KING, P.J., dissenting.
¶ 4. This case was remanded for a Batson hearing. That has been completed and the supplemental record provided to this Court.
¶ 5. This Court by order dated December 11, 2001 has affirmed the conviction of Clarence Jones.
¶ 6. I write separately to express my concern that the reason for striking Sarah Farmer was purely pretextual. That reason being she was a friend of someone who had testified as a defense witness in an earlier trial.
¶ 7. The acceptance of that as a valid reason requires a stretch which is not justified by the record and which I am unprepared to make. This calls into question the other strikes by the prosecution.
¶ 8. I would therefore reverse for a new trial.
IRVING, J., joins this dissent.