635 So.2d 864 (1994)
Wilbert Lee HARPER
v.
STATE of Mississippi.
No. 91-KA-00699.
Supreme Court of Mississippi.
April 7, 1994.
Michael C. Hester, Wittman & Rafferty, Gulfport, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, Ellen Y. Dale, Ridgeland, for appellee.
Before PRATHER, P.J., and PITTMAN and McRAE, JJ.
McRAE, Justice, for the Court:
Wilbert Lee Harper appeals his conviction for possession of a controlled substance (cocaine) from the Circuit Court for the First Judicial District of Harrison County. After the May 16, 1991, judgment he was sentenced to serve a term of three (3) years in the custody of the Mississippi Department of Corrections, said sentence to run consecutively *865 to a previous sentence. On appeal, Harper raises the following issues:
I. NO PROBABLE CAUSE EXISTED TO JUSTIFY THE STOP OF HARPER, AND, THEREFORE, THE TRIAL COURT ERRED IN ALLOWING THE COCAINE RECOVERED FROM THE STOP INTO EVIDENCE.
II. THE PROSECUTION FAILED TO OFFER RACE NEUTRAL EXPLANATIONS FOR USING FOUR OUT OF FIVE PEREMPTORY CHALLENGES AGAINST POTENTIAL BLACK JURORS.
We find that there existed reasonable suspicion for the officers to make a brief investigatory stop and that the trial court properly allowed the cocaine recovered from the stop into evidence. Further, we hold that the trial court did not err in allowing the prosecution to use four out of its five peremptory challenges against blacks since the State gave valid, credible race-neutral reasons for striking the potential jurors. Therefore, Harper's propositions are without merit, and the lower court's judgment is affirmed.

FACTS
On July 18, 1990, Police Officers Larry Phillips, Rusty Haynes and Shane Corr were patrolling a high crime area of Gulfport known as "the quarters." The officers had planned to conduct a "walk through" whereby they actually walk through a high-crime neighborhood in order to reassure residents of their presence and daunt possible criminal activity. As the officers stopped at a street corner and exited their vehicle, they noticed Wilbert Lee Harper and a friend standing on the street corner observing their actions. The two men began to walk away briskly. The three police officers followed the two men and ordered that they stop. Harper and his friend, however, did not comply with the officers' order and continued to walk away. Officer Phillips detained Harper's friend, and the other two officers chased Harper. Officer Corr testified that, as he shined his flashlight on Harper, he noticed Harper's hand clenched tightly around an object. As Harper maneuvered around a car located in the yard of a house, he threw the object from his hand and stated that he did not have anything. Officer Corr recovered the object, a matchbox, and Officer Haynes apprehended Harper. As the matchbox contained what appeared to be, and later was confirmed to be, crack cocaine, Harper was arrested.
Both Officer Phillips and Officer Corr testified that the two men were not the subject of their initial stop. Officer Corr stated that they had not seen the two men commit any crime but simply wished to check their identification to determine if there existed any outstanding arrest warrants issued for the two men.
Harper, on the other hand, testified that, as he was walking through the yard of a house, he noticed a man on the porch of the house throw a matchbox to the ground. Harper testified that the matchbox did not belong to him and that he offered to show the police officers exactly who threw the matchbox filled with crack cocaine.
During trial and with the jury momentarily dismissed, Harper moved that the cocaine be excluded from evidence as it was the fruit of an illegal search and seizure. The trial judge relied on California v. Hodari, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), in overruling the motion and stated that, since the facts in Hodari and the case sub judice were extremely similar, there existed authority for the police officers' conduct.

LAW

I. WAS THERE PROBABLE CAUSE CONSTITUTIONALLY SUFFICIENT TO SUPPORT THE STOP OF HARPER?
Harper contends that he was denied his rights and privileges guaranteed to him by the Fourth Amendment of the United States Constitution and by Section 23 of the Mississippi Constitution of 1890[1] since the record *866 is void of any proof that the police officers had probable cause or reasonable suspicion to stop him. Harper also contends that the conduct of the police officers cannot be justified in light of the landmark case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which provides that in order to justify a stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21, 88 S.Ct. at 1880.
Harper argues that because of this illegal detention, Penick v. State, 440 So.2d 547 (Miss. 1983), which states that "an illegal arrest renders a subsequent search inadmissible," must be employed. Penick, 440 So.2d at 558. "This Court has held in a number of cases that an arrest begins when the pursuit for the purpose of making an arrest begins." Singletary v. State, 318 So.2d 873, 876 (Miss. 1975). See Pollard v. State, 233 So.2d 792, 793 (Miss. 1970). The present case does not, however, concern a chase for the purpose of making an arrest. In the case sub judice, the issue is whether the officers had sufficient reasonable suspicion to justify a brief investigatory stop, not probable cause to justify an arrest as Harper would have us believe. The fact scenario in the case at hand is exceptionally similar to the facts in the recent case of California v. Hodari, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
In Hodari, a group of young individuals who were gathered together on a street corner fled when they noticed the approach of an unmarked police car. Hodari, at 622-23, 111 S.Ct. at 1549, 113 L.Ed.2d at 695. A chase ensued, and when an officer wearing street clothes with a jacket that had "Police" on both the front and back progressed closer to the defendant, the defendant discarded a small rock of cocaine. Id. At court, Hodari moved to suppress as evidence the cocaine found. The California Court of Appeals reversed the lower court's denial of the motion and held that Hodari had been "seized" at the time the police officer approached him and, therefore, the cocaine must be suppressed as the product of an illegal seizure. Id.
The Supreme Court, in its reversal of the California Court of Appeals, found the issue to be whether Hodari, at the time he disposed of the cocaine, had been "seized." Id. at 625-27, 111 S.Ct. at 1550-51, 113 L.Ed.2d at 697. Hodari cited Terry in claiming that, even though there was no physical force on his person by the officer at the time he discarded the drugs, the officer's command to halt constituted a "show of authority" which "in some way restrained the liberty of a citizen." Hodari, at 625, 111 S.Ct. at 1550, 113 L.Ed.2d at 697 (quoting Terry, 392 U.S. at 19, 88 S.Ct. at 1878). The Supreme Court agreed with the California Court of Appeals that an order to stop was a show of authority but narrowed the issue to "whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield." Hodari, at 626, 111 S.Ct. at 1550, 113 L.Ed.2d at 697.
The United States Supreme Court held that the cocaine was abandoned and was not the fruit of an illegal seizure. Id. at 628-30, 111 S.Ct. at 1552, 113 L.Ed.2d at 699. The Court stated that an arrest requires "either physical force ... or, where that is absent, submission to the assertion of authority." Id. at 626, 111 S.Ct. at 1551, 113 L.Ed.2d at 697. Since Hodari did not comply with the order to halt, there was no submission to the show of authority, and, therefore, no arrest occurred within the confines of the Fourth Amendment. Id. The Court held that a seizure "does not remotely apply ... to the prospect of a policeman yelling `Stop, in the name of the law!' at a fleeing form that continues to flee." Hodari, 499 U.S. at 626, 111 S.Ct. at 1550, 113 L.Ed.2d at 697.
*867 We find support for this proposition in Jackson v. State, 335 So.2d 116 (Miss. 1976), wherein this Court provided:
An arrest is not consummated until there has been a taking of possession of a person by manual caption, or submission on demand; and although a manual touching is unnecessary unless there is resistance to an arrest, there must be restraint of a person to establish an arrest.
Jackson, 335 So.2d at 118-19 (quoting Fondren, Alias Tommy Taylor v. State, 253 Miss. 241, 259, 175 So.2d 628, 636 (1965)).
Based on Mississippi's definition of "arrest," Harper was not seized or arrested when he discarded the drugs. Harper was not in any form or fashion restrained or stopped at the time he threw down the cocaine, and the cocaine, therefore, was abandoned and not the fruit of an unlawful seizure or arrest. Since Harper's argument is premised on a stop or arrest of his person, his claim has no merit. There was no error in the lower court's finding that no stop or arrest had occurred at the time the matchbox hit the ground, and there existed no need to find probable cause.

II. DID THE TRIAL COURT ERR IN APPROVING THE STATE'S PEREMPTORY CHALLENGES AND THE RACE-NEUTRAL REASONS GIVEN THEREFOR?
Harper assigns as reversible error a violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in that the prosecution failed to offer race neutral explanations for using four out of its five peremptory challenges against blacks. In order to initiate a prima facie case of racial discrimination in exercising peremptory challenges a defendant must show that:
[H]e is a member of a cognizable racial group, [citation omitted] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of mind to discriminate.' Avery v. Georgia, 345 U.S. [559] at 562 [73 S.Ct. 891 at 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 1722-23, 90 L.Ed.2d 69, 87 (1986).
We have followed Batson and have on occasion further provided:
Once the defendant has established a prima facie case of discrimination to the satisfaction of the trial court, the prosecution must supply reasons which are racially neutral for using its peremptory challenges on minority members. (Citation omitted). The prosecutor does not have to provide the same degree of justification for a peremptory challenge as is required for a challenge for cause. Benson v. State, 551 So.2d 188, 192 (Miss. 1989); Wheeler v. State, 536 So.2d 1347, 1351 (Miss. 1988).
The defendant is allowed to rebut the reasons which have been offered by the prosecution. Taylor v. State, 524 So.2d 565 (Miss. 1988). When the defendant offers no rebuttal, the court is forced to examine only the reasons given by the prosecution. Johnson v. State, 529 So.2d 577, 584 (Miss. 1988).
Bush v. State, 585 So.2d 1262, 1268. See Harper v. State, 510 So.2d 530, 532 (Miss. 1988); Williams v. State, 507 So.2d 50, 53 (Miss. 1987). As is the proper procedure, Harper objected to the State's exercising four of its five peremptory challenges against blacks. The prosecution then proceeded with its four racially neutral reasons for doing so as required by Batson.
The State used its first peremptory challenge against Ella Holmes, who informed the trial judge that she was, at the time of trial, involved in a sex discrimination lawsuit. In addition, Ms. Holmes informed the trial judge that he had previously committed her brother to Whitfield. The prosecution's reason for striking Ella Holmes was that, since she had a lawsuit pending, she may believe she owed an obligation to the State or, in the alternative, she may be hostile toward the *868 State due to the nature of the pending lawsuit. The lower court found the reason to be racially neutral and allowed the peremptory challenge. A pending civil lawsuit is a sufficiently race-neutral reason under Batson, although it has never before been specifically used. In Chisolm v. State, 529 So.2d 635 (Miss. 1988), a black potential juror was excused because of "labor union difficulties." Id. at 637. As we found a "labor union problem" reason sufficient to withstand a Batson challenge, we find that the trial judge did not err in allowing the prosecution to use a peremptory challenge against one who has a lawsuit pending.
The State's second peremptory challenge was used against Jimmie Smith, who indicated that he had once worked with one of the defense witnesses. In objecting to the juror for this reason, the prosecution also opposed Mr. Smith because of his demeanor and young age. We have before upheld a peremptory challenge based on a juror's dress, age and demeanor. Bradley v. State, 562 So.2d 1276, 1283 (Miss. 1990). In combining the fact that Mr. Smith had worked with a defense witness and the fact that the prosecution objected to his age and demeanor, sufficient evidence exists for this strike.
The State's third peremptory strike of a black was on Thomas Robinson, who had previously sat on two criminal juries which resulted in one "not guilty" verdict and one mistrial. The trial court commented that it was clearly understandable for the prosecution to strike a possible juror who had before sat on juries with those outcomes. We have on occasion considered this same explanation, which the defense contended to be racially motivated, and affirmed it as non-race based. Davis v. State, 551 So.2d 165, 170 (Miss. 1989), cert. denied 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 797, reh. denied 495 U.S. 953, 110 S.Ct. 2221, 109 L.Ed.2d 546 (1990). Again, the prosecution offered a sufficient racially neutral reason for its strike.
The last peremptory strike was on Jerry Packman, a black male. The district attorney stated that he attempted to make eye contact with the potential juror but was not able to even once draw his attention. The prosecution further stated that it wanted Mr. Packman excused because he continuously made eye contact with the defendant. As stated previously, we addressed this explanation and affirmed it in Johnson, stating:
A prosecutor may sense by a juror's demeanor that he is hostile to being in court and thus fear that the juror might respond negatively to the prosecution simply because the government was responsible for calling him to jury duty.
Johnson, 529 So.2d at 585.[2]
In responding to the explanations given by the prosecution, the defense did not present an attack based on fact or law. Defense counsel, however, merely argued that the reasons given for exclusion were only superficial race neutral reasons that were simply a facade to mask the racially discriminatory purposes behind the strikes.
Determining whether there lies a racially discriminatory motive under the State's articulated reasons is left to the sole discretion of the trial judge. Lockett v. State, 517 So.2d 1346, 1350 (Miss. 1987). Moreover, a lower court's factual findings are given due deference and will not be overturned unless there appears an error that is against the overwhelming weight of the evidence. Johnson, 529 So.2d at 583.
The trial court properly allowed into evidence the cocaine which was discarded by Harper. The cocaine had been abandoned by Harper and, therefore, was not the fruit of an illegal seizure or arrest. When faced with essentially the exact facts, the United States Supreme Court held that no Fourth Amendment seizure results when a defendant fails to submit to a show of authority. Moreover, an arrest is not made until an arrestee has been physically controlled or consents to authority. In this case, there was no consent to authority at the time the cocaine was discarded.
*869 We hold that the trial court did not err in allowing the prosecution to use four out of its five peremptory challenges against blacks, as the State gave valid, credible race-neutral reasons for striking the blacks jurors.
Finding no merit in the errors assigned, the conviction and sentence are affirmed.
CONVICTION FOR POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF THREE (3) YEARS IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE TO RUN CONSECUTIVE TO A PREVIOUS SENTENCE, AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Section 23 of the Mississippi Constitution provides:
The people shall be secure in their persons, houses, and possessions from unreasonable seizure and search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.
[2] In Hatten v. State, 628 So.2d 294 (Miss. 1993), we ruled prospectively that trial courts must make an on-the-record factual determination in instances such as this. Hatten, 628 So.2d at 298. This case, however, was tried before Hatten.