IN THE COURT OF APPEALS

7/29/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-01115 COA

JOHN METRIC HOGAN APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. LEE J. HOWARD

COURT FROM WHICH APPEALED: OKTIBBEHA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: CHARLES BRUCE BROWN

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: JOLENE M. LOWRY

DISTRICT ATTORNEY: DEFORREST ALLGOOD

NATURE OF THE CASE: CRIMINAL

TRIAL COURT DISPOSITION: POSSESSION OF COCAINE: SENTENCED TO SERVE A TERM OF 6 YRS IN THE MDOC & A $2,500.00 FINE; DEFENDANT IS ORDERED TO ATTEND DRUGS & ALCOHOL COUNSELING AS DEEMED NECESSARY BY THE MDOC

MOTION FOR REHEARING FILED: 8/26/97

CERTIORARI FILED: 12/4/97

MANDATE ISSUED: 4/1/98

BEFORE THOMAS, P.J., HERRING, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

John Metric Hogan appeals his conviction of possession of cocaine, raising the following issues as error:

**I. THE TRIAL COURT ERRED IN REFUSING TO GRANT THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION OR MOTION FOR A JNOV, OR ALTERNATIVELY, A NEW TRIAL.**

**II. THE JURY VERDICT WAS CONTRARY TO THE LAW AND THE EVIDENCE PRESENTED.**

**III. THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE EVIDENCE.**

**IV. PLAIN ERROR OCCURRED WHEN THE JURY WAS INFORMED HOGAN WAS GUILTY BY HIS OWN COUNSEL, RESULTING IN INEFFECTIVE ASSISTANCE OF COUNSEL.**

Finding no error, we affirm.

## FACTS

On June 10, 1994, Narcotics Agent Derek Holland was driving around a high drug trafficking area with Agent Tim Hamilton, both of whom are with the Tri-County Narcotics Task Force. They noticed an individual named Jessie Shields standing at a Quick Stop gas station, and remembered that Shields had an outstanding warrant for his arrest. The agents turned their vehicle around to

apprehend Shields. As the agents drove up, Shields was talking to John Metric Hogan. Agent Hamilton testified that as Hogan walked past Shields an exchange or transaction of drugs appeared to take place. Upon approaching Shields, Hogan walked away from the agents toward a park across the street. Shields was handcuffed and placed in Officer Shank Phelps's patrol car. At this time, the agents got back into their car and proceeded across the street to locate Hogan. As they pulled into the park and began to exit their vehicle, Hogan jumped off a picnic table and began to run away from the officers. After a pursuit on foot, the agents and Officer Phelps eventually apprehended Hogan. Both Officer Phelps and Agent Hamilton testified that when Hogan stopped, Hogan stuck his hands into his pants pockets. This caused the officers to draw their weapons on Hogan fearing that he had a weapon in his pockets. Hogan then brought both hands up toward his mouth as if to try and swallow something and threw a matchbox on the ground. Officer Phelps stated that he could see that Hogan was chewing on something and attempted to keep Hogan from swallowing what he was chewing on, but was unsuccessful. Upon seeing Hogan throw the matchbox, Agent Hamilton went straight for the matchbox, which was the only matchbox in the area around Hogan. Upon opening the matchbox, the officer saw that it appeared to contain cocaine residue. The residue in the matchbox was determined by the crime lab to be cocaine. Both Agent Holland and Agent Hamilton stated that matchboxes with cocaine residue had previously been found in the area where Hogan was apprehended.

ANALYSIS

I.

**THE TRIAL COURT ERRED IN REFUSING TO GRANT THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION OR MOTION FOR A JNOV, OR ALTERNATIVELY, A NEW TRIAL.**

II.

**THE JURY VERDICT WAS CONTRARY TO THE LAW AND THE EVIDENCE PRESENTED.**

Hogan argues that the circuit court erred in denying his motion for directed verdict at the close of the State's case. Since Hogan put on proof after the State rested, his challenge to the sufficiency of the evidence must be considered in light of "the evidence before the court . . . on the last occasion when the sufficiency of the evidence was challenged before the trial court." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993); *Wetz v. State*, 503 So. 2d 803, 807-08 n.3 (Miss. 1987). "A defendant waives the appeal of an overruled motion for a directed verdict made at the end of the state's case when the defendant chooses to go forward with its case." *Esparaza v. State*, 595 So. 2d 418, 426 (Miss. 1992) (citing *Wetz*, 503 So. 2d at 808). Put another way, the motion for a directed verdict is a

procedural vehicle[] for challenging the sufficiency of the case for the prosecution. . . . When the sufficiency of the evidence is challenged on appeal, this Court properly should review the Circuit Court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. Here, of course, that was when the Circuit Court overruled the motion for a new trial. . . .

*Wetz*, 503 So. 2d at 807-08 n.3.

Since Hogan went forth with his case, he is procedurally barred from raising the denial of his directed verdict at the end of the State's case. However, like a motion for a directed verdict, a JNOV challenges the sufficiency of the evidence supporting a guilty verdict. *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989). Since Hogan did move for a JNOV, we review the evidence on the last occasion when Hogan challenged the sufficiency of the evidence before the trial court, at the time of his motion for JNOV. *McClain*, 625 So. 2d at 778; *Wetz*, 503 So. 2d at 807-08.

Hogan argues that the lower court should have granted his motion because the evidence failed to establish that Hogan knew what was in the matchbox. Hogan asserts that he was not in constructive possession of the matchbox and cocaine, and that because the matchbox was found a few feet from Hogan, this does not mean Hogan was aware of its contents. In *Cunningham v. State*, 583 So. 2d 960, 961 (Miss. 1991), the supreme court stated that "when contraband is found on premises which are not owned by the defendant, mere physical proximity to the contraband does not, in itself, show constructive possession." "[T]he State must show additional circumstances that are actually incriminating in order to establish constructive possession." *Ferrell v. State*, 649 So. 2d 831, 835 (Miss. 1995). What Hogan fails to recall is that Officer Phelps and Agent Hamilton identified Hogan as the man whom they saw bring both hands toward his mouth and then throw the matchbox away from his person. The matchbox recovered was the only matchbox found in the area. This evidence is sufficient to establish Hogan's constructive possession of the matchbox and cocaine.

These assignments of error test the sufficiency and weight of the evidence. To test the sufficiency of the evidence of a crime, this Court must

[w]ith respect to each element of the offense, consider all of the evidence - not just the evidence which supports the case for the prosecution - in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty.

*Wetz*, 503 So. 2d at 808 (citations omitted).

The standard of review employed upon a challenge to the weight of the evidence, in a criminal case, is provided by *Thornhill v. State*, 561 So. 2d 1025, 1030 (Miss. 1989):

In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.

The lower court has the discretionary authority to set aside the jury's verdict and order a new trial

only where the court is "convinced that the verdict is so contrary to the weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." *Roberts v. State*, 582 So. 2d 423, 424 (Miss. 1991) (citations omitted). Based on the record before us, suffice it to say that the evidence was sufficient to allow the case to go to the jury, and the jury's verdict was not against the overwhelming weight of the evidence. Both assignments or error are without merit.

## III.

### THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE EVIDENCE.

Hogan contends that he was denied his rights and privileges guaranteed to him by the Fourth Amendment because, he contends, the State failed to show that the police officers had probable cause to stop him. Hogan argues that there was no probable cause to chase him for the purposes of arrest because the officers had not seen him commit any crime. The State contends that this case does not

concern a chase for the purpose of making an arrest. The State argues that the issue is whether the officers had sufficient reasonable suspicion to justify a brief investigatory stop.

The situation in the case at bar in analogous to *Harper v. State*, 635 So. 2d 864 (Miss. 1994). In *Harper*, three police officers planned a "walk-through" of a high crime area in the city of Gulfport. *Harper*, 635 So. 2d at 865. As the officers stopped and exited their vehicle, the defendant and an acquaintance began to walk away briskly from the officers. *Id.* The officers ordered the two men to stop, but they did not comply with the officers' order and continued to walk away. *Id.* As Harper continued to elude the police, the officers saw Harper maneuver around a car and throw an object from his hand. *Id.* One of the officers recovered the thrown object, a matchbox, and Harper and his friend were eventually detained. *Id.* The matchbox contained crack cocaine. *Id.*

The officers testified that the two men were not the subject of their initial stop. *Id.* One officer testified that they had not seen the men commit any crime, but they wanted to check their identification to determine whether any outstanding warrants existed for the two men. *Id.* Harper contended that there was no probable cause for the stop and thus the crack cocaine was seized as the result of an illegal arrest. *Id.* at 865-66. The Mississippi Supreme Court stated that the issue was whether the officers had sufficient reasonable suspicion to justify a brief investigatory stop. *Id.* at 866. The supreme court found that Harper was not seized or arrested when he discarded the drugs. *Id.* at 867. The court stated that Harper was not restrained or stopped at the time he threw the cocaine and, therefore, the cocaine was abandoned and not the fruit of an unlawful seizure or arrest. *Id.* The court concluded by stating that there existed no need to find probable cause because no stop or arrest had occurred at the time the matchbox hit the ground. *Id.*

In the case at hand, Hogan was seen in the presence of Shields at the gas station. The narcotics agents knew an outstanding warrant existed on Shields and turned their vehicle around to pick up Shields. Agent Hamilton testified that an exchange or transaction took place between Hogan and Shields before the agents entered the parking lot. After Shields was placed into Officer Phelps's patrol car, the agents proceeded across the street to a park where Hogan was then sitting. The agents exited their vehicle, and upon doing so, Hogan jumped off a picnic table and ran away from the agents. The agents and Officer Phelps began chase, eventually catching up to Hogan after he stopped. Hogan

stuck his hands into his pockets and then brought his hands up toward his face and began to swallow something. Hogan then threw the matchbox away from his person and laid on the ground in anticipation of being handcuffed. Agent Hamilton then picked up the thrown matchbox and held it as evidence.

Hogan contends that his situation is distinguishable from *Harper*, in that in *Harper* the defendant was continuing to evade the officers when the drugs were discarded or abandoned. Hogan contends that his situation is different because he stopped running and was surrounded by the officers when the matchbox was thrown. However, Hogan threw the matchbox containing the cocaine residue before he was arrested or seized. Hogan then proceeded to lay on the ground in anticipation of being arrested. At this time, Hogan was placed under arrest. Hogan was not in any form restrained or stopped by the officers at the time he threw the cocaine, and therefore, the cocaine was abandoned by Hogan and was not the fruit of an unlawful seizure or arrest. Accordingly, the motion to suppress was correctly denied and this assignment of error is without merit.

## IV.

## PLAIN ERROR OCCURRED WHEN THE JURY WAS INFORMED HOGAN WAS GUILTY BY HIS OWN COUNSEL, RESULTING IN INEFFECTIVE ASSISTANCE OF COUNSEL.

Hogan asserts that the trial court erred in failing to *sua sponte* declare a mistrial on the basis of ineffective assistance of counsel. Hogan cites numerous reasons why his counsel was ineffective. The Mississippi Supreme Court adopted the *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), standard for evaluating ineffective assistance of counsel claims. *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995). A defendant has to show that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial. *Id.* It is required that the defendant prove both elements. *Brown v. State*, 626 So. 2d 114, 115 (Miss. 1993); *Wilcher v. State*, 479 So. 2d 710, 713 (Miss. 1985), *cert. denied*, 475 U.S. 1098 (1986). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

[T]here is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Schmitt v. State*, 560 So. 2d 148, 154 (Miss. 1990) (quoting *Strickland*, 466 U.S. at 691).

Hogan complains that he was denied effective assistance of counsel on three separate violations, each occurring during his counsel's closing argument. First, he argues that counsel informed the jury during closing argument that this was such a small amount of cocaine that the agents should not have even charged him. Next, Hogan contends that counsel informed the jury that Hogan consumed the cocaine. Finally, Hogan asserts that counsel told the jury that if the police had pumped Hogan's stomach and introduced the cocaine into evidence, that the case would have been undefendable.

Upon reading all of the closing argument, we conclude that Hogan's argument must fail. By themselves, the statements appear to be damaging to Hogan. However, in the context in which they were made, it is clear that the statements did not amount to any error on the part of the trial judge or Hogan's trial counsel. Hogan's counsel was trying to get the point across to the jury that *if* Hogan had consumed the cocaine, then the police could have procured a search warrant, taken Hogan to the hospital, and pumped his stomach in an effort to recover the swallowed cocaine. Hogan's counsel then stated that if Hogan's stomach had been pumped and the cocaine was recovered, that counsel would not waste either his or the jury's time. Counsel's decision in this regard can only be viewed as one of overall defense strategy.

Hogan has failed to show that his trial counsel's performance was deficient, and that this deficiency deprived him of a fair trial. Hogan has also failed to show how the trial judge erred by failing to *sua sponte* declare a mistrial based on the statements made by Hogan's trial counsel. Therefore, Hogan has failed to prove that he was denied his sixth Amendment right to effective assistance of counsel.

**THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE AND ENHANCED SENTENCE OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND A FINE OF $2,500.00 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO OKTIBBEHA COUNTY.**

**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**