SOUTHWICK, J.,
for the Court:
¶ 1. On March 24, 1998, we rejected all but one of Jerry Lewis Salter’s arguments in the appeal of his conviction for murder of Willie “Jake” Shield. The one reserved issue was whether the State had exercised its peremptory challenges in a racially discriminatory manner. After a remand to the Circuit Court on that issue, a hearing regarding the jury challenges was held. The trial court found that the State had not improperly used its challenges. We affirm.
¶ 2. The facts and holding on initial appeal of this case are explained in the 1998 opinion of this Court and is incorporated as an appendix. There we discussed the allegation that the State exercised its peremptory challenges in a manner to violate Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We found that a prima facie case sufficient to require the State to explain its reasons for the challenges had been made at trial. The court on remand was -to conduct a hearing to elicit the State’s reasons for the challenges. The following were the choices for the trial judge:
After conducting the hearing, unless the trial court finds no purposeful discrimination by the State, a new trial must be ordered. If the court concludes that there was no impermissible discrimination, then the court should “by opinion and order make its factual findings and certify the same to this Court.” (Thorson v. State, 653 So.2d 876, 896 (Miss.1994)).
¶ 3. At the hearing the State explained each of its six challenges, all used against black veniremen. The trial judge explained that he had made and retained “pretty copious notes” from the earlier proceedings. The prosecution also had retained information from that earlier proceeding that allowed it to state the reasons for the strikes.
¶ 4. The first black prospective juror struck had the same last name (Anthony) as four people who had cases in the district attorney’s worthless check unit and who were from the same county as the juror. The State believed that it was likely enough that she was related to some of these other individuals as to justify using a peremptory challenge.
¶ 5. The next black venireman struck said that he knew defense counsel and had also at some time been to the lounge where the crime occurred.
¶ 6. The third had the same last name (Ball) as two local people with criminal records, one who had various charges against him from 1974-1994 and the other being someone with charges for aggravated assault pending against him at the time of Salter’s trial.
¶ 7. The fourth and fifth black venireman struck had been to the lounge at which the crime occurred at least twenty times each and may have known something about the case.
¶ 8. The final black prospective juror struck knew defense counsel and knew that he had defended a neighbor’s son who had been charged with a serious crime.
¶ 9. There was no evidence introduced by defense counsel to rebut any of these stated reasons.
¶ 10. The judge reviewed on the record the stated reason for striking each of these prospective jurors. The judge reviewed his own notes from the prior proceedings, including the statements that veniremen made in response to questions. His notes confirmed the statements made by the State as to four of the jurors, such as admissions to frequenting the lounge or knowing the defense counsel. The court was more troubled by the two who were *1091 challenged because they had the same last name as someone who those assisting the State on jury selection knew to be suspected or convicted of crimes. He concluded, though, that the State’s reluctance to gamble with whether these jurors were related to the suspects was a race-neutral reason and not a pretext.
¶ 11. The challenges because veniremen knew the defense counsel are reasonable and have been upheld as facially race-neutral. Lockett v. State, 517 So.2d 1346, 1357 (Miss.1987). In fact, too close of a relationship is a challenge for cause. Holmes v. Elliott, 443 So.2d 825, 833 (Miss.1983). Familiarity with the crime scene and potentially with some of the witnesses, such as bartenders and other patrons who will be called to testify, is a logical concern. There were seven witnesses later called at trial who were customers, employees, or owners. Therefore a juror’s ability to -review evidence unaffected by prior associations and events was a- legitimate concern. Finally, the supreme court has found that a belief by a prosecutor that a juror may be related to a prison inmate from the county who has the same last name as the juror was a potentially weak but still a facially race-neutral reason. Henderson v. State, 641 So.2d 1184, 1185 (Miss.1994) (stating this was one of a group of reasons of which it was said that “some ... appear weak....”).
¶ 12. A peremptory challenge need not be based on a good reason; it just cannot have a racially discriminatory purpose. Whether facially, neutral reasons are accurate statements or instead are pretexts is a decision left to the discretion of the trial court. The trial court is in a unique position to consider the demeanor of counsel, which may be the best evidence confirming or disproving pretext. Stewart v. State, 662 So.2d 552, 559 (Miss.1995). We find that the trial court was within its discretion in concluding that these were facially neutral reasons and that they were not pretexts for racial discrimination.
APPENDIX:
DECISION OF COURT OF APPEALS MARCH 24, 1998
EN BANC
SOUTHWICK, J„ FOR THE COURT:
¶ 13. Jerry Lewis Salter was convicted by a jury in the Circuit Court of Lowndes County of the murder of Willie “Jake” Shield. Salter challenges his conviction on these grounds: (1) the State exercised its peremptory challenges in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and (2) the jury verdict.was contrary to the overwhelming weight of the evidence. We find adequate evidence to support the verdict, but remand this cause to the Circuit Court of Lowndes County to conduct a hearing as mandated by Batson v. Kentucky.
FACTS
¶ 14. On October 23, 1994, Jerry Lewis Salter, along with his brother, girlfriend, and friend, went to a Columbus nightclub named the Flamingo Lounge. A fight erupted between Salter, his brother, and another patron of the club. The owner of the club testified that he escorted Salter and his brother outside while directing the other patron to remain inside of the club. Salter disputed the owner’s testimony and denied any involvement in the altercation.
¶ 15. Evidence was introduced that while standing outside of the club, Salter directed his girlfriend to return to his house to get his gun and two clips of ammunition. After she returned to the club, Salter placed-the gun behind the tire of a parked car and deposited the two clips of ammunition-in his pocket. Salter and his girlfriend then re-entered the club. Shortly after midnight; Willie Shields approached Salter outside of the club and informed him that it was not necessary to fight. While Salter and Shields continued to discuss the matter, Salter’s brother confronted Shields and alleged that Salter was not *1092 involved in the earlier altercation inside of the club. According to several witnesses, Salter then reached into his pants and pulled out a gun. As Shields retreated with his hands in the air, Salter shot Shields three times. The shots were fatal.
¶ 16. During the trial, Salter admitted that he shot Shields. However, Salter asserted that he acted in self-defense. Salter claimed that Shields first pulled out a weapon, fired towards him, and struck his brother in the neck. Salter alleged that the only reason he returned fire was in defense of his and his brother’s lives. At the conclusion of the trial, the jury found Salter guilty of the murder.
DISCUSSION
I. PEREMPTORY CHALLENGES
¶ 17. Salter argues that the State exercised its peremptory challenges in an unconstitutional manner to exclude prospective black jurors from the jury. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Salter contends that the trial court committed reversible error in finding that he failed to show a prima facie case of systematic exclusion of blacks by the State.
¶ 18. In order to establish a prima facie case of purposeful discrimination in the selection of a jury, a defendant must show that: “(1) he is a member of a cognizable racial group; (2) that the prosecutor exercised peremptory challenges to excuse a venire person of the defendant’s race; and (3) that there is an inference that the venire persons were excluded on account of their race.” Id. at 96, 106 S.Ct. 1712. Once this prima facie showing has been established, then the burden of production shifts to the State to come forward with a race-neutral explanation for challenging the jurors. Id. The State’s explanation need not rise to the level of justification as required for a challenge for cause. Harper v. State, 635 So.2d 864, 867 (Miss.1994).
¶ 19. Additionally, the defendant is allowed to rebut the reasons which have been offered by the State. Bush v. State, 585 So.2d 1262, 1268 (Miss.1991). However, if the defendant offers no rebuttal, the trial court is forced to examine only the reasons given by the State. Id. The trial court must determine whether a discriminatory intent is inherent in the State’s explanation. Lockett v. State, 517 So.2d 1346, 1350 (Miss.1987). The court must make an on-the-record factual determination of the merits for each of the State’s race-neutral reasons for exercising peremptory challenges against potential jurors. Hatten v. State, 628 So.2d 294, 298 (Miss.1993). Consequently, on appeal, the trial court’s findings are accorded great deference and will not be reversed unless they are clearly erroneous or against the overwhelming weight of the evidence. Id.
¶ 20. During the jury selection process, the State exercised peremptory challenges against six of the seven blacks that were on the venire. Salter objected. The trial court overruled Salter’s motion to require the State to give a racially-neutral reason for the challenges, noting that there was a “fifty/fifty split on the number of strikes that the State ... used for members of the Caucasian race and members of the African American race.” The court concluded that Salter failed to make a prima facie case of systematic exclusion. Consequently, there was no inquiry by the trial court to determine whether the State had a racially-neutral explanation for challenging the six blacks.
¶ 21. The court’s procedure was correct, but we find its conclusion to be inaccurate. By showing that six of the seven black veniremen were challenged, Salter made a prima facie case of purposeful discrimination. The State may have used its remaining six challenges against whites, but by challenging all but one of the seven blacks the State left a question that required the trial court to seek an answer. The trial court should have required the State to give racially-neutral reasons for its chai- *1093 lenges. Had there been only six blacks on the venire (instead of seven) and the State had struck them all, the court’s perspective that only half of the challenges were used against blacks would still be true. Determining whether a prima facie case exists must focus on whether the State was excluding all or almost all of the blacks. That occurred here. Explanations were required.
¶ 22. In Thorson v. State, 653 So.2d 876, 896 (Miss.1994), the supreme court remanded the cause where the trial court failed to inquire into whether the State had race-neutral explanations for peremptorily challenging prospective black jurors. Under the authority of Thorson, we remand this cause to the Circuit Court of Lowndes County to conduct a hearing on whether the State exercised its peremptory challenges in an unconstitutional manner to exclude prospective black jurors from the jury. The district attorney’s office will be given an opportunity to present race-neutral reasons for each of the challenges used against the six black veniremen. Salter will also be granted the opportunity to rebut the reasons offered by the State.
¶ 23. After conducting the hearing, unless the trial court finds no purposeful discrimination by the State, a new trial must be ordered. If the court concludes that there was no impermissible discrimination, then the court should “by opinion and order make its factual findings and certify the same to this Court.” Id. at 896.
II. WEIGHT OF THE EVIDENCE
¶ 24. Salter next asserts that the trial court erred in denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. Salter contends that the evidence presented by the State and by his defense counsel established that he shot Shields in the heat of passion. Salter argues that the State failed to establish beyond a reasonable doubt that he shot Shields with premeditation, and thus, the verdict is contrary to the weight of the evidence.
¶ 25. In reviewing the decision of the trial court, this Court views all of the evidence in the light consistent with the jury verdict. Strong v. State, 600 So.2d 199, 204 (Miss.1992). A motion for new trial should only be granted to prevent an unconscionable injustice. McClain v. State, 625 So.2d 774, 781 (Miss.1993). Accordingly, we will reverse and remand for a new trial only upon reaching the conclusion that the trial court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 26. Both Salter and the State presented evidence relating to the events leading up to the incident at the nightclub. Although Salter testified that he shot Shields in self-defense, the jury heard the testimony from several witnesses who testified to facts that would indicate Salter’s guilt. Salter’s girlfriend testified that Salter requested that she return to his house to get his gun and ammunition. Additional witnesses testified that Shields did not have a weapon and that Shields backed away from Salter with his hands in the air. After Salter first shot Shields, several witnesses testified that Salter proceeded to shoot Shields two additional times. None of this evidence was incredible, unbelievable, or substantially impeached. The jury was entitled to conclude that the proof established guilt of the murder.
END OF APPENDIX
¶ 27. THE JUDGMENT OF CONVICTION OF THE CIRCUIT COURT OF LOWNDES COUNTY OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
*1094 McMILLIN, C.J., KING, P.J, BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.