LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. On April 26, 2007, a jury in the DeSoto County Circuit Court found Ash-ante Newberry guilty of one count of sale of a controlled substance, cocaine. New-berry was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007) and his sentence was doubled pursuant to the sentence enhancement provisions in Mississippi Code Annotated section 41-29-147 (Rev.2005). New-berry was ordered to serve a term of sixty years in the custody of the Mississippi Department of Corrections without eligibility for probation or parole and to pay a $1,000 fine.
 

 ¶ 2. Newberry then filed a motion for a new trial and a motion for a judgment notwithstanding the verdict. The trial judge denied both motions. Newberry now appeals, asserting the following issues: (1)
 
 Batson
 
 violations by the State denied him a fair trial; (2) the State violated his rights by introducing other bad acts not charged in the indictment; (3) the prosecutor made improper remarks during closing argument; and (4) the trial court abused its discretion in allowing hearsay into evidence.
 

 FACTS
 

 ¶ 3. The facts of this case concern a drug buy. On December 10, 2005, an undercover agent for the DeSoto County Metropolitan Narcotics Unit, Danny Wilkey, entered a residence on Labauve Street in Hernan-do, Mississippi. Agent Wilkey was with a confidential informant. Both men entered the kitchen and saw three white males and one black male. Agent Wilkey followed the black male into the living room and conducted a buy. The black male and two of the white males were never identified. Another black male, identified as Newber-ry, entered the room and sold Agent Wil-key a bag of cocaine powder for $100.
 

 DISCUSSION
 

 I. DID THE STATE’S EXCLUSION OF MINORITY JURORS VIOLATE
 
 BATSON
 
 AND DENY NEWBERRY A FAIR TRIAL?
 

 
 *754
 
 ¶ 4. In his first issue on appeal, Newberry argues that the State struck two minority jurors in violation of
 
 Batson,
 
 thus denying him a fair trial.
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), provides procedural directives for the trial court to follow in detecting and disallowing the practice of using peremptory challenges to remove members of an identified racial group from jury service based upon nothing more than their racial identification. To successfully assert a
 
 Batson
 
 claim, the following procedure must occur:
 

 First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
 

 Berry v. State,
 
 728 So.2d 568, 572(¶ 11) (Miss.1999) (quoting
 
 Hernandez v. New York,
 
 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). “The focus of the
 
 Batson
 
 inquiry is on the purposeful discrimination in a party’s use of peremptory challenges, not on the ultimate racial composition of the jury.”
 
 Id.
 

 ¶ 5. Our standard of review requires a reversal only if the factual findings of the trial judge are “clearly erroneous or against the overwhelming weight of the evidence.”
 
 Tanner v. State,
 
 764 So.2d 385, 393(¶ 14) (Miss.2000). Any determination made by a trial judge under
 
 Batson
 
 is accorded great deference because it is “based, in a large part, on credibility.”
 
 Coleman v. State,
 
 697 So.2d 777, 785 (Miss.1997). The term “great deference” has been defined in the
 
 Batson
 
 context as meaning an insulation from appellate reversal of any trial findings which are not clearly erroneous.
 
 Lockett v. State,
 
 517 So.2d 1346, 1349-50 (Miss.1987).
 

 ¶ 6. Newberry challenged two of the State’s peremptory strikes. The first strike was made against juror number 60, an Asian male, and the second strike was made against juror number 69, an African American female. Newberry raised a
 
 Bat-son
 
 challenge, to which the trial court responded as follows: “[A]s to the issue of a prima facie case of racially motivated strikes, I will find that the burden has not been met by the Defendant, but as is my requirement for the record, I will ... require the State to state their race neutral reasons for the strike.” In response, the State first listed its concerns with juror 60, the Asian male:
 

 Your honor, I noticed that he was an IT specialist. We don’t have any audio or video in this case, and I thought he might look at that negatively against the State. Also, it was my understanding from talking to Ms. Brewer — she had previously voir dire’d [sic] this same panel for a different case — that he had asked a lot of questions, ... and I just thought that there may be a possibility with a lot of questions being asked, coupled with the fact that he was an IT specialist, that that might weigh heavily against the State on impartiality.
 

 Newberry responded that juror number 60 made no responses during voir dire. The trial court found the State’s race-neutral reasons to be acceptable, and we cannot find error in this determination. A juror’s employment and demeanor have been deemed valid race-neutral reasons.
 
 Harris v. State,
 
 901 So.2d 1277, 1281(¶ 14) (Miss.Ct.App.2004).
 

 ¶ 7. Regarding juror number 69, the African American female, the State’s reasons were that she had only lived in DeSoto County for twenty-two months and
 
 *755
 
 that she had made no eye contact with the prosecutor. Newberry responded that he did not think that was a valid reason. The trial court did not offer a specific explanation for finding the State’s race-neutral reasons acceptable. The trial court stated that “we have listed [the State’s] stated race-neutral reasons for the strikes, and [Newberry] has been given an opportunity to state his rebuttal.... I find there’s not been a prima facie case of a systematic exclusion of jurors based upon their race.” Newberry contends that this Court should reverse and remand the case to the trial court to make specific findings as to the merits of the race-neutral reasons given for excluding juror number 69. However, the supreme court has found the following:
 

 [W]here a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that Batson-related purpose alone. This Court is fully capable of balancing the
 
 Batson
 
 factors in cases such as this one. Continued remand of such cases only wastes the trial court’s limited resources and acts to further delay justice.
 

 Gary v. State,
 
 760 So.2d 743, 748(¶ 12) (Miss.2000). The trial court in the present case clearly found no purposeful discrimination by the State in striking two minority jurors. One of the reasons submitted by the State, lack of eye contact, has been deemed an appropriate race-neutral reason.
 
 Harper v. State,
 
 635 So.2d 864, 868 (Miss.1994).
 

 ¶ 8. We cannot find any abuse of discretion on the part of the trial court in determining that the State’s two strikes on minority jurors were not the result of any purposeful discrimination. This issue is without merit.
 

 II. DID THE STATE VIOLATE NEWBERRY’S RIGHTS BY INTRODUCING OTHER BAD ACTS NOT CHARGED IN THE INDICTMENT?
 

 ¶ 9. In his second issue on appeal, Newberry argues that the State violated his rights by introducing other bad acts not charged in the indictment. Specifically, Newberry contends that the jury was allowed to hear evidence suggesting that Agent Wilkey made subsequent undercover drug purchases from Newberry on December 14 and December 20. We note that Newberry filed a motion in limine prior to trial asking the trial court to prohibit testimony regarding his prior drug convictions. The trial court granted Newberry’s motion. However, Newber-ry’s argument regarding other bad acts concerns subsequent purported drug sales, not any prior convictions.
 

 ¶ 10. On cross-examination, Agent Wil-key was asked by Newberry if that was the only day he dealt with Newberry. Agent Wilkey responded, “I dealt with him that one day, yes, sir.” Newberry then produced a copy of a report by another agent, Max Herring, and handed it to Agent Wilkey. Newberry then stated, “Correct me if I’m wrong. Doesn’t that say on December 14th, 2005, Agent Danny Wilkey called Ashante Newberry? Does it say that?” Agent Wilkey responded, “Yes, sir, it does, but this is the wrong case file number.”
 

 ¶ 11. Immediately after this exchange the State objected, and the trial court asked the jury to exit the courtroom. The State then noted its objection to the line of questioning by Newberry. The State told the trial court that it had instructed Agent Wilkey not to mention his contact with Newberry during two other drug buys. The State then asked the trial court to allow Agent Wilkey to explain why there was a later date on the report. The trial court agreed with the State that Newberry had opened the door, but the questioning
 
 *756
 
 would be limited to any further investigation of Newberry by Agent Wilkey and not any other transaction involving drugs.
 

 ¶ 12. Upon resuming the cross-examination of Agent Wilkey, Newberry questioned Agent Wilkey on the amount of time Agent Wilkey spent with Newberry during the transaction. Agent Wilkey testified that he was in the house for approximately five minutes, of which two or three were spent with Newberry. On redirect, the State asked Agent Wilkey if he was able to “get a good look at” Newberry. Agent Wilkey responded in the affirmative. The State then asked Agent Wilkey if December 10th was the only time he had seen Newberry. Agent Wilkey responded that he saw Newberry on December 14th and December 20th and had a few phone conversations with him. At no time did the State reference these other two dates as times when drug buys occurred. Agent Wilkey testified that on a “buy walk,” you buy the narcotics, let the perpetrator walk, and conduct further investigation before making an arrest.
 

 ¶ 13. “It is a fundamental principle of law that a defendant cannot complain about evidence that he himself produced at trial.”
 
 Wright v. State,
 
 797 So.2d 1028, 1032(¶ 17) (Miss.Ct.App.2001). As the contact between Newberry and Agent Wilkey subsequent to December 10th was elicited by Newberry, we find no error by the trial court in allowing the State to elaborate on the matter. The trial court set out certain limitations for Newberry and the State to follow, and we find that decision appropriate. This issue is without merit.
 

 III. DID THE PROSECUTOR MAKE IMPROPER REMARKS DURING CLOSING ARGUMENT?
 

 ¶ 14. In his third issue on appeal, Newberry argues that the prosecutor made improper remarks during closing argument, thus denying him a fair trial. However, Newberry failed to make a contemporaneous objection to any allegedly prejudicial statements made by the prosecutor during closing argument. Thus, Newberry has waived this issue for purposes of appeal.
 
 Swindle v. State,
 
 755 So.2d 1158, 1169(¶ 34) (Miss.Ct.App.1999).
 

 IV. DID THE TRIAL COURT ABUSE ITS DISCRETION BY ALLOWING HEARSAY INTO EVIDENCE?
 

 ¶ 15. In his final issue on appeal, Newberry argues that the trial court abused its discretion by allowing hearsay into evidence, thus denying him a fair trial. At issue is the testimony of Lieutenant Jeremy Degan. Lt. Degan’s role in the drug buy was to monitor the situation via audio surveillance. Lt. Degan testified that when Agent Wilkey entered the residence, the wire worn by Agent Wilkey malfunctioned. Lt. Degan then called Agent Wilkey and instructed him to keep his cell phone on so he could monitor the situation. Lt. Degan testified that the purpose of this was to listen for any distress from Agent Wilkey. Lt. Degan testified that he heard Agent Wilkey and a male discuss “something about footballs” and then “hard.” This referred to the first buy of crack cocaine between Agent Wil-key and the unidentified black male. Agent Wilkey had previously testified that he told this man he did not want any “footballs” or Xanax, but that he wanted “a hundred on the hard” or $100 worth of crack cocaine.
 

 ¶ 16. At that point in Lt. Degan’s testimony, Newberry made a hearsay objection. The prosecutor responded, “I think he can tell what he listened to. It’s nothing Agent Wilkey hasn’t already testified to.” After a bench meeting, the trial court overruled Newberry’s hearsay objection.
 

 
 *757
 
 ¶ 17. Lt. Degan continued describing what he heard over the cell phone. Lt. Degan heard a second male voice, but he could not hear what he said. Before Lt. Degan could continue with what he heard Agent Wilkey say, Newberry again made an objection, which the trial court overruled. Lt. Degan then stated that he heard Agent Wilkey say, “You want a hundred on that.” However, Lt. Degan did not identify, nor did the State ask him to identify, any voice he heard other than that of Agent Wilkey and the confidential informant.
 

 ¶ 18. Mississippi Rule of Evidence 801(c) defines hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The standard of review regarding the admission or exclusion of evidence is abuse of discretion.
 
 Yoste v. Wal-Mart Stores, Inc.,
 
 822 So.2d 935, 936(¶ 7) (Miss.2002). Any error in the admission or exclusion of evidence is not grounds for reversal unless the error adversely affected a substantial right of a party.
 
 Lynch v. State,
 
 877 So.2d 1254, 1281(¶ 86) (Miss.2004). We do not find that Lt. Degan’s testimony was hearsay. Lt. Degan’s testimony was not offered to prove that Newberry sold drugs to Agent Wilkey. Rather, Lt. Degan’s testimony was offered to corroborate Agent Wilkey’s testimony that Agent Wilkey entered this particular house in order to conduct a drug buy.
 
 See Brown v. State,
 
 969 So.2d 855, 861(¶ 17) (Miss.2007). This issue is without merit.
 

 ¶ 19. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF THE SALE OF COCAINE AND SENTENCE AS A HABITUAL OFFENDER OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE AND TO PAY A $1,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.