PAYNE, J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. William Chancellor, a.k.a. Michael Paige, a.k.a. Michael Jones, was indicted for aggravated assault which occurred on May 31, 1995. Chancellor was indicted as an habitual offender as he had prior felony convictions for robbery and receiving stolen property. On May 21, 1996, Chancellor received a jury trial in the First Judicial District of Hinds County, Mississippi. The jury found Chancellor guilty of aggravated assault. The trial judge sentenced Chancellor to life commitment in the custody of the Mississippi Department of Corrections, pursuant to Miss.Code Ann. § 99-19-83 (Rev.1994).
¶2. The State failed to support its indictment with evidence that Chancellor had served in excess of one year on both of his prior commitments in order to sustain a finding under Miss.Code Ann. § 99-19-83 (Rev.1994). Accordingly, the State amended the indictment to Miss.Code Ann. § 99-19-81 (Rev.1994). The trial judge sentenced Chancellor to serve twenty years in the custody of the Mississippi Department of Corrections; however, the amended sentencing order was not changed to reflect the new sentence. After careful review of the facts and law concerning this situation, we affirm the conviction of aggravated assault, but hold that the circuit court should rectify the sentencing order to reflect a sentence commensurate with Miss.Code Ann. § 99-19-81 (Rev.1994).
FACTS
¶ 3. On May 31,1995, a shooting incident occurred at the Willow Grove Apartments on Yarborough Street in the city of Jackson, Mississippi. This shooting incident left the victim, Mario Lampley, paralyzed from the waist down.
¶ 4. Several witnesses testified. Curtiss Mosley testified that he saw William Chancellor with a weapon and testified that he saw Chancellor “pulling the trigger and *859 shooting at Mario.” Mosley further testified that he did not see Mario Lampley or Charles Gray, Lampley’s cousin, with a gun. Omega Burkett saw Chancellor with a gun and further saw Chancellor shoot Lampley. Chancellor did not testify. However, Mario Lampley did testify. Mario stated that Chancellor shot him in the back. Charles Gray testified as well. Gray stated that Lampley attempted to walk away from Chancellor, but Chancellor shot Lampley in the back.
¶ 5. However, Rodney Chancellor, William Chancellor’s brother, stated that Mario Lampley had a gun that day, and that he did not see his brother with a weapon. Dewayne Booker, William Chancellor’s brother-in-law, testified that he saw Mario Lampley with a gun.
ISSUES PRESENTED
I. WHETHER WILLIAM CHANCELLOR WAS UNFAIRLY DENIED HIS FUNDAMENTAL RIGHTS AS PROVIDED FOR BY THE SIXTH AMENDMENT CONCERNING THE EFFECTIVE ASSISTANCE OF COUNSEL AND THE RIGHT TO COMPEL THE ATTENDANCE OF MATERIAL WITNESSES TO TESTIFY IN HIS BEHALF AS PROVIDED FOR BY THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND AS SET FORTH IN THE UNITED STATES SUPREME COURT CASE OF STRICKLAND V. WASHINGTON AND HE WAS THEREBY DENIED A FUNDAMENTALLY FAIR TRIAL.
¶ 6. Chancellor enumerates particular lapses by the trial judge and actions by his attorneys which he contends ultimately prohibited him from receiving a fair trial. The first such lapse, he argues, is that his attorney and the trial judge prohibited him from testifying. Chancellor submits that the action of his attorneys severely prejudiced his chances of obtaining a favorable verdict, and but for his attorneys’s deficient performance the outcome would be different.
¶ 7. Chancellor’s first contention is devoid of merit. In order to succeed on ineffective assistance of counsel, he must meet the two-pronged test set out in Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and reiterated by the Mississippi Supreme Court as follows:
Under the first prong, the movant “must show that the counsel’s performance was deficient and that the deficient performance prejudiced the defense.” Here there is a strong presumption of competence. Under the second prong of the test, the movant must show that there is a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” The defendant must prove both prongs of the test.
Mohr v. State, 584 So.2d 426, 430 (Miss.1991).
¶ 8. As to the first prong, it is presumed “that trial counsel’s conduct is within the wide range of reasonable conduct and that decisions made by counsel are strategic.” Edwards v. State, 615 So.2d 590, 596 (Miss.1993). Understandably, the Strickland standard “is difficult to establish, and appropriately so.” Knox v. State, 502 So.2d 672, 676 (Miss.1987).
¶ 9. Chancellor also argues that his brother, Lexis, should have been compelled to testify. Furthermore, he states that he should have been allowed to call all witnesses in possession of relevant and material facts. The totality of the circumstances, he argues, evidence ineffective and deficient performance by his attorneys. Thus, he insists, his conviction should be overturned and sentence vacated.
¶ 10. From a review of the trial transcripts, it does not appear that Chancellor’s alleged desire to testify was ever made known to the trial judge or his attor *860 neys. The record appears to suggest that Chancellor did not want to be in the courtroom. Outside the presence of the jury, the circuit judge stated:
Let the record show that prior to the jury being placed in the jury box, the defendant became uncontrollable and violent in his conduct, talking in loud and boisterous language which incited the, what I assume to be the members of his family that were seated in the audience of the courtroom to also enter in and participate, causing a great deal of confusion and disruption it the courtroom and in the courthouse, which required the actions of the bailiffs to bring the circumstances under control. I personally observed the defendant resisting restraint and causing a great deal of problem to the court bailiffs.
¶ 11. The trial judge also made an on the record statement indicating that he would “allow the defendant to come and testify in his own behalf if he elects to do so” but cautioned that Chancellor would be handcuffed during that process. One of Chancellor’s defense attorneys indicated that he would relate that message to Chancellor. That attorney returned and stated:
Yes, Your Honor, I have. We talked to him during the break and he informed me that he is not going to participate at all. He is not coming back. It’s my understanding that his witnesses are not going [to] testify.
¶ 12. Considering the circumstances, that Chancellor had shown an inability to control himself in the courtroom, we cannot say that the trial judge erred in placing restrictions on Chancellor, namely, that Chancellor be handcuffed if returned to the courtroom. Neither can we say that Chancellor desired to testify. It is simply impossible to conclude from the record that the trial counsel could have been constitutionally ineffective in failing to allow the appellant to testify when there is no evidence in the record that he ever desired to testify at trial and it seems at this juncture, an untenable argument advanced by Chancellor. Furthermore, there is nothing noted in the record to doubt the honesty of Chancellor’s attorneys in reporting Chancellor’s choice not to participate.
¶ 13. Concerning the allegation by Chancellor that his attorney failed to call Chancellor’s brother, Lexis Chancellor, to testify, we find that there is insufficient proof to allow this Court to make a finding that the trial defense counsel was constitutionally ineffective in failing to compel Lexis to testify. As stated above, many of the defense attorney’s decisions are “strategic” and fall “within the wide range of reasonable conduct.” Edwards, 615 So.2d at 596. Apparently, Chancellor’s attorneys did not wish to call Lexis Chancellor, but we cannot state that this decision was incorrect. This being said, we find this assignment of error to be without merit.
¶ 14. Chancellor also states that his attorneys failed to call witnesses in possession of relevant material and evidence. In order to bolster his claim, Chancellor would have had to produce affidavits from potential witnesses outlining their respective testimony — that was not done— though he managed to garner the testimony of Larry Reece, and supplement the record after the case was tried before the jury. Simply put, Chancellor failed to make the requisite showing of ineffective assistance of counsel under Strickland.
¶ 15. Furthermore, the circuit judge stated concerning the effectiveness of counsel:
In any event, the defendant was removed from the courtroom and the trial was — you were required-ordered by the Court to represent the defendant, which I would add for the record you have ably done, in spite of his lack of cooperation with you. I don’t think that there could have been a better defense presented for the defendant under the facts that I have heard regardless of who had been his lawyer. So you are to be commend *861 ed for you [sic] effort in representing Mr. Chancellor.
¶ 16. Having reviewed the arguments posed by each side, we find that Chancellor’s citations of error contain no merit.
II. WHETHER THE TRIAL JUDGE AND TRIAL COUNSEL JOINTLY DENIED CHANCELLOR HIS FIFTH AMENDMENT RIGHT TO TESTIFY IN HIS OWN BEHALF AS GUARANTEED BY THE UNITED STATES AND THE MISSISSIPPI CONSTITUTIONS AND AS A RESULT, CHANCELLOR WAS DENIED A FUNDAMENTALLY FAIR TRIAL.
¶ 17. Due to the apparent disturbance generated in the courtroom, Chancellor was removed from the premises. As Chancellor states in his brief, “[s]ome of Chancellor’s witnesses and/or family members joined in the brewhah which caused the trial judge much concern.” This “brewhah” is noted in the record. Chancellor now claims that he wanted to testify. He states that his attorney materially misrepresented his (Chancellor’s) intentions to testify by telling the judge that Chancellor did not want to testify. Furthermore, he also states that were he to return to the courtroom shackled and testify, the scene would create a prejudicial effect against him.
¶ 18. Following the close of the State’s case-in-chief, one of Chancellor’s attorneys made a motion for a mistrial because Chancellor was not present to assist in his own defense. A motion was made on the same grounds after the jury had returned their verdict. Both motions were denied.
¶ 19. Addressing the point of the defendant’s right to be present at trial, the United States Supreme Court noted in Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) the following: '
A defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.
¶ 20. The record reveals that Chancellor had been warned about the consequences of disrupting the court. Outside the presence of the jury, the trial judge stated:
Just a minute. Like I told you — are you on the record here? Like I told you when you made the outburst at the last trial, that we were going to try you the next time whether you acted right or not. So, you take him on.
¶ 21. Chancellor failed to abide by that warning and was removed. The trial judge offered to allow Chancellor to return to the courtroom with certain restrictions to ensure the safety of those in the courtroom, yet Chancellor declined. Accordingly, this assignment of error has no merit.
¶ 22. As noted above, Chancellor also argues that his Fifth Amendment rights have been abridged as the trial judge “was required to explain his ... rights in such a manner as to satisfy the court that they were fully understood by him.” The Mississippi Supreme Court addressed this point in Shelton v. State, 445 So.2d 844 (Miss.1984). The Shelton court noted that if a defendant does not testify, he should be advised by the trial court of his right to testify. However, the supreme court qualified that statement by saying that the rule was not mandatory and merely a suggestion. Id. at 847.
¶ 23. Considering the fact that Chancellor was notified that he could testify, coupled with his decision not to testify, we find this citation of error to be without merit.
*862 III. WHETHER THE SENTENCING DOCUMENTATION PROVIDED THE DEPARTMENT OF CORRECTIONS REFLECTING A LIFE SENTENCE AS AN HABITUAL OFFENDER IS INCORRECT AS THE TRIAL RECORD EVIDENCES THE IMPOSITION OF A TWENTY (20) YEAR SENTENCE AS AN HABITUAL OFFENDER. .
¶ 24. Originally, Chancellor was sentenced to life imprisonment under Miss. Code Ann. § 99-19-83 (Rev.1994). This statute effectively qualified Chancellor for life imprisonment upon conviction. However, the State failed to produce documents necessary to validate this sentence — due to record problems with the Jackson Police Department. The trial judge verbally resentenced Chancellor under Miss.Code Ann. § 99-19-81 (Rev.1994) for a term of twenty years. However, the trial judge failed to change Chancellor’s sentence in writing.
¶ 25. The State confesses error in the resentencing of Chancellor and requests this Court to remand this cause for the sole purpose of amending Chancellor’s sentencing order to reflect the twenty year commitment which the trial court intended, but failed to sign. The State further requests that this Court order the trial court to forward that resentencing information to the Mississippi Department of Corrections so that Chancellor’s commitment documents will be amended.
¶ 26. Because the State confesses error and because Chancellor’s resentencing order is not in line with the verbal decree of the trial judge, we remand this case for proper sentencing.
CONCLUSION
¶ 27. Having read the arguments presented by the defendant, we find merit with Chancellor’s last citation of error— that being an error by the trial judge in finalizing Chancellor’s sentence.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF AGGRAVATED ASSAULT WITH A WEAPON AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE CASE IS REMANDED FOR PROPER SENTENCING UNDER MISS. CODE ANN. § 99-19-81 (Rev.1994). ALL COSTS OF THIS APPEAL ARE TAXED TO HINDS COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and SOUTHWICK, JJ., concur.